THE COMMERCIAL MUTUAL ACCIDENT COMPANY

*v.*

MARY HALL BATES.

*Opinion filed October 24, 1898—Rehearing denied December 8, 1898.*

1. INSURANCE—*only answers strictly responsive to questions are warranties.* Although a policy of insurance refers to and makes the application a part of the policy, yet only such statements as are made strictly in answer to the inquiries of the application can be regarded as warranties.

2. SAME—*statements made in addition to full answer are surplusage.* An attempted description, by one making written application for insurance, of the form of his policy in another company, after fully answering the interrogatory in the application as to whether he carried other insurance, and if so, the amount and in what companies, is mere surplusage, and the alleged untruth of the description cannot be made the basis of a forfeiture.

3. SAME—*promise to do an act in the future is not a warranty.* A statement in an application for insurance, added to the applicant's answer to a question whether he carried other insurance, and if so, the amount and in what companies, to the effect that he would drop one of the policies mentioned at a certain date in the future, is not a warranty, and, not being a warranty nor responsive to the question, the untruth of the statement is not ground for forfeiture.

4. SAME—*application and policy constitute a written contract.* The written application for insurance signed by the applicant, and the policy issued thereon, constitute a written contract between the insurance company and the assured, and any controversy in regard to such contract must be determined by the policy and application.

5. SAME—*parol evidence is inadmissible to vary terms of written contract of insurance.* A contract of insurance having been reduced to writing all prior negotiations are merged in the document, which is the evidence of the final agreement of the parties, and parol evidence is inadmissible to vary its terms.

6. SAME—*written contract of insurance cannot be shown to have been delivered on parol condition.* Where a policy of insurance has been duly delivered by the agent, the company cannot show, in defense to a suit on the policy, that it was delivered solely upon the strength of the agent's belief in a false oral statement by the insured that he had dropped a certain policy in another company, which he was carrying at the time of his application.

7. APPEALS AND ERRORS—*whether death of insured was by accident is a question of fact.* Whether the evidence in a suit on an accident policy sufficiently shows that the death of the insured was the result of external, violent and accidental means is a question settled by the Appellate Court's judgment of affirmance.

*Commercial Mutual Accident Co.* v. *Bates,* 74 Ill. App. 335, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

ST. JOHN & MERRIAM, and H. D. McBURNEY, for appellant:

A warranty in insurance is in the nature of a condition precedent. It must appear on the face of the policy, or if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or if on another paper, it must be so referred to in the policy as to clearly indicate that the parties intended them to form a part of it. *Insurance Co.* v. *Robertson,* 59 Ill. 123; *Insurance Co.* v. *Rogers,* 119 id. 474.

Where the application for insurance is expressly declared to be a part of the policy, and where the statements are warranted to be true, they are held to be

material whether they are so or not, and if shown to be false there can be no recovery. *Insurance Co.* v. *Robertson,* 59 Ill. 123; *Thomas* v. *Insurance Co.* 108 id. 91; *Insurance Co.* v. *Rogers,* 119 id. 474; *Aid Ass.* v. *Hall,* 118 id. 169.

Where a specific question is asked and the applicant makes an untruthful answer, the policy is avoided whether the answers are warranties or representations, because the parties may, by their contract, make that material which would otherwise be immaterial,—and this as well in a representation as in a warranty. *Insurance Co.* v. *Radin,* 120 U. S. 183; *Miller* v. *Insurance Co.* 31 Iowa, 232; *Campbell* v. *Insurance Co.* 98 Mass. 402; *Annuity Co.* v. *Grevy,* 91 Ill. 159; *Aid Ass.* v. *Hall,* 118 id. 169; Marshall on Dues, 249; May on Dues, secs. 156-158.

A representation is an oral or written statement which precedes the contract of insurance, and is not a part thereof unless it be otherwise stipulated, made by the insured or his authorized agent to the underwriter or his authorized agent, and relates to facts necessary to enable the underwriter to form his judgment whether he will accept the risk at the premium. Joyce on Insurance, sec. 1883; *Insurance Co.* v. *Robertson,* 59 Ill. 123.

The same rule applies in construing a promissory representation as a former warranty. Promissory representations are as binding as promissory warranties. May on Insurance, 182; *Schultz* v. *Insurance Co.* 6 Fed. Rep. 672; *Jeffreys* v. *Insurance Co.* 22 Wall. 47; *Kimball* v. *Insurance Co.* 9 Allen, 542; *Assurance Co.* v. *Insurance Co.* 52 Conn. 579.

Fraud vitiates all contracts. If the delivery of the policy be obtained by misrepresentation or fraud it can have no effect as a binding contract. Joyce on Insurance, sec. 99; *Insurance Co.* v. *Ewing,* 92 U. S. 377.

The contract of insurance is one in which the parties must act with the utmost good faith. No false representation which goes to affect the risk must be made, otherwise the policy will be void. *Insurance Co.* v. *Rubin,* 79 Ill. 402.

A. J. HOPKINS, F. H. THATCHER, and F. A. DOLPH, for appellee:

The most liberal construction possible in favor of the insurer will be made, so as to avoid a forfeiture. *Healy* v. *Accident Co.* 133 Ill. 556; *Insurance Co.* v. *Schultze*, 73 id. 586.

Although a policy refers to and makes the application a part of it, yet only statements made strictly in answer to the inquiries therein contained can be regarded as warranties, and the balance is surplusage.  Flanders on Fire Insurance, (2d ed.) 236, 237; Wood on Fire Insurance, secs. 144, 160; *Insurance Co.* v. *McCormack*, 24 Ill. 455; *Insurance Co.* v. *Harmar*, 2 Ohio St. 461.

If an insurance company deems other information material it should propound other inquiries in its blank form of application, and the fact that it does not will estop the company from claiming that other information was material.  *Insurance Co.* v. *Boomer*, 52 Ill. 442.

Representations as to future unexecuted intentions, even if it was not intended to comply with the same when made, have never been held to constitute fraud, even though they may have influenced a transaction. *Gage* v. *Lewis*, 68 Ill. 604; *People* v. *Hardy*, 128 id. 9.

The rule excluding parol evidence to vary the terms of a written contract, and that a contract cannot rest partly in parol and partly in writing, is held applicable to insurance contracts to prevent gross fraud and disastrous consequences to the rights of the parties. *Insurance Co.* v. *Martin*, 40 N. J. L. 568.

All parol agreements of the parties made previous to or at the time of the execution of the policy are inadmissible.  May on Insurance, (3d ed.) sec. 579 *b;* Bliss on Life Insurance, 615; Biddle on Insurance, secs. 523, 908; Ostrander on Insurance, (2d ed.) 749.

The policy and application constitute the written contract, and no parol evidence is admissible.  *Sheldon* v. *Insurance Co.* 22 Conn. 235.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of assumpsit brought by the appellee, Mary Hall Bates, in the circuit court of Kane county, against the appellant, upon an accident insurance policy issued by it to her brother, Erasmus W. Hall, in which she was named as beneficiary. To the declaration the defendant pleaded the general issue and also filed seven special pleas. To these pleas the plaintiff interposed a general demurrer, which the court sustained. On October 1, after the demurrer was sustained to the seven pleas, the defendant obtained leave to file an additional plea, to which a demurrer was also sustained. On October 4 another additional plea was filed, and the court sustained a demurrer to it. On October 7 still another additional plea was filed, to which the court also sustained a demurrer. A trial was then had before a jury, resulting in a verdict and judgment in favor of the plaintiff for the amount of the policy and interest thereon. To reverse the judgment the insurance company appealed to the Appellate Court, where the judgment was affirmed.

The principal question, and, indeed, the only question of any importance, presented by the record is, whether the court ruled correctly in overruling the demurrers to the special pleas filed by the insurance company. We will consider first the ruling of the court on defendant's first special plea.

It is set up in the plea that before the issuing and delivery of the certificate of accident insurance set out in the declaration, the said Erasmus W. Hall executed and delivered to the defendant his application in writing, wherein and whereby he warranted the statements therein to be full and complete; that Hall agreed to accept the certificate of membership to be issued on his application subject to all its conditions and limitations; that said application was accepted by the defendant, and it thereupon issued and delivered to said Hall its certificate or policy of accident insurance in said plaintiff's declara-

tion set forth, the warranties and agreements contained in the application of said Hall for membership being, by the terms of said certificate, incorporated into and made a part of said contract or certificate of accident insurance in said plaintiff's declaration mentioned; that in the application made by said Hall and delivered to this defendant, among other things contained therein and made a part thereof, appears the following interrogatory: "13.— Have you any other accident insurance? If so, name amount and companies;" that the said Hall, in his said application, then and there made written answer to said interrogatory, as follows:  "Atlas, $5000; Star, $10,000, comb.; will drop Star July 15, '96;" that the word "comb.," as appearing in said Hall's answer to said last mentioned question in said application incorporated, was and is a common abbreviation for the word "combination," thereby meaning a policy or certificate of accident insurance providing for double benefits in the event of external, accidental violence causing disability or death; that at the time of the making and delivery of said application as aforesaid, and at the time said defendant so issued and delivered its said contract or certificate of accident insurance in said plaintiff's declaration set forth, said Hall did not have $10,000 combination accident insurance in said Star Accident Company and had no combination accident insurance in same; that the answer of said Hall to said interrogatories was not then and there full and complete, and was not true; that by reason of said Hall's false answer to said interrogatories in said application contained, so executed and delivered by the said Hall as aforesaid, and by reason of said answers not being then and there full and complete, the said policy or contract of accident insurance in said plaintiff's declaration set forth became and was absolutely null and void, etc.

Although a policy of insurance refers to and makes the application a part of the policy, yet it is well settled that only such statements as are made strictly in answer

'to the inquiries contained in the application can be regarded as warranties. (Wood on Fire Insurance, secs. 144-160; Flanders on Fire Insurance,—2d ed.—236, 237; *Norwich Fire Ins. Co.* v. *Boomer*, 52 Ill. 442; *Howard Fire and Marine Ins. Co.* v. *Cornick*, 24 id. 455.) Here the plea, in substance, merely sets out the thirteenth interrogatory and answer, and then avers that the deceased did not have a certain form of policy, which it designates as a combination policy. This is the substance of the plea. It contains no allegation that the deceased did not have $5000 in the Atlas and $10,000 in the Star, nor does it allege that any part of the deceased's answer which is responsive to the question propounded to him is untrue. Referring to the thirteenth interrogatory and answer, upon which the plea is predicated, it will be seen that the only information sought was whether the deceased had any other accident insurance, and if he had, then he was required to name the amount and the company. There were but two subjects upon which he was required to answer. If, then, the assured truthfully stated whether he had other accident insurance, and the amount and companies, he answered everything required of him, and the policy cannot be forfeited. If the answer required by the interrogatory of the company was true, deceased has complied with the requirements of the company's question, and it must be held liable under its policy. If the company deemed it important to obtain any other information from the deceased relating to the subject, it had the right to propound other questions before issuing the policy, and in the absence of any further demand for information by the company it will be presumed that further information was not deemed material. Whatever the assured may have answered in addition to making full and complete answer to the interrogatory propounded was mere surplusage, which cannot be availed of by the company for the purpose of defeating its policy. The deceased, in answer to the interrogatory, said that he

had $5000 in the Atlas Insurance Company and $10,000 in the Star. This was a full and complete answer to the interrogatory, and it is not charged in the plea that the answer is untrue. The word "comb." included in the answer was not responsive to any part of the question, and may be regarded as surplusage. What may have been intended by the use of the word "comb." in the answer is not entirely clear, but as that part of the answer may be regarded as surplusage it is immaterial what the intention was. We think the plea was bad, and the court could not have done otherwise than sustain the demurrer to it.

The second special plea to which the court sustained a demurrer was substantially like the first, and what has been said in regard to the first plea disposes of the second.

The third special plea contains substantially the same allegations as to the making of the application, the statement of the warranties contained therein, their incorporation into the contract, the same question and answer, the allegation as to the making and delivery of the policy, the explanation of the words "Star" and "comb.," and then alleges as a breach of warranty that the said Hall did not drop his $10,000 of insurance in the Star Accident Company in accordance with the warranty, but kept the same in force until his death, whereby the said policy became and was absolutely null and void. This plea is liable to the same objection that exists to the two preceding ones. The question propounded contained nothing which required a promise on the part of the deceased in regard to the dropping of the Star. That part of the answer in which the deceased said, "will drop Star July 15, '96," was not responsive to anything contained in the interrogatory, and was therefore mere surplusage.

There is another fatal objection to the plea. The allegation is that deceased stated that he had $10,000 in the Star Insurance Company, which he promised to drop on the 15th day of July, 1896, and that he failed to do so. He did have the amount of insurance in the Star stated,

so that part of the statement was true. The only part of the statement relied upon as false is that he agreed to drop the insurance at a certain time and failed to do so. In other words, the deceased promised to do a certain act in the future and failed to live up to his promise. In a case of this character a breach of warranty cannot be predicated upon a promise to do something in the future or upon an unexecuted intention. In *People* v. *Ellis*, 128 Ill. 9, it was held that a promise to perform an act, though accompanied with an intention not to perform, is not such a representation as can be made the ground of an action at law, as for fraud. In the discussion of a similar question in *Gage* v. *Lewis*, 68 Ill. 604, it was said (p. 615): "It cannot be said that these representations and promises were false when made, for until the proper time arrived and plaintiff refused to comply with them it could not positively be known that they would not be performed. Even if, at the time they were made, it was not intended to comply with them, it was but an unexecuted intention, which has never been held, of itself, to constitute fraud. If they legally amount to anything they constitute a contract. 'As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law.'" So in *Kitson* v. *Farwell*, 132 Ill. 327, it was held that a promise to perform an act or to pay for goods when the price is due, though accompanied with an intention not to perform, is not such a fraudulent representation as can be made the basis of an action of law for deceit; that such a promise is not false when made. If the deceased failed to drop the insurance in the Star, as he agreed to do, it may be that an appropriate action might be maintained for a breach of the agreement. But such is not this case.

It is claimed that the agreement was a warranty on the part of the deceased, a breach of which rendered the

policy void. We do not concur in that view. As was well said by the Appellate Court: "The agreement could in no sense be regarded as a warranty of any existing fact, but a mere promise to do a particular thing in the future, which, if unperformed, subjected the promisor to such liability as might follow the breach of any other ordinary promise, but would not have the effect of rendering the entire contract nugatory."

The fourth, fifth and sixth pleas do not differ substantially from the first, second and third, and as the demurrer was properly sustained to the latter pleas, for the same reason it was properly sustained to the former.

The seventh plea is not relied upon in the argument, so far as the alleged rejection of Hall's application by any other insurance company is concerned, but is only relied upon as setting up a defense based on the fraud Hall practiced on the defendant in obtaining the policy. The seventh plea may properly be considered with the three additional pleas filed October 1, 4 and 7, as they all rest substantially on the same principle.

In the first additional plea it is in substance alleged, that on July 10, 1896, Hall called at the office of Lincoln, the agent of the defendant company in Chicago, and inquired if he represented an accident company that had no *pro rata* clause in its policies, and was informed that defendant's policies contained no such clause; that Hall obtained one of defendant's blank applications; that on the 14th of July, 1896, he returned to the agent's office with the application filled out, and had written, in answer to the inquiry therein as to other accident insurance, as follows: "Atlas, $5000; Star, $10,000, comb.;" that defendant's agent told Hall it would be useless to send the application to the defendant company, as they would not write him while he was carrying so large an amount of accident insurance; that Hall replied that he was going to drop the Star insurance as it had a *pro rata* clause in it, and he would not have that kind of insurance; that

Lincoln then told him he had better write that into the application, and Hall did so by writing after the above quoted words, "will drop Star July 15, '96;" that he then delivered the application to the agent, with a request that it be forwarded to defendant's home office; that a policy was written on this application and forwarded to the agent, Lincoln, with instructions not to deliver it or receive the premium until he had been assured by Hall that the Star insurance had been dropped and canceled as per statement of his application; that subsequently, upon the return of Hall to the agent's office, the agent told him of the receipt of the policy and of the instructions of defendant to him, as above set forth, and Hall thereupon told the agent that he had dropped the same and that it was canceled; that relying upon the truth of this statement the agent delivered the policy in question to Hall and received the premium therefor; alleges the statement of Hall that he had dropped his Star insurance was a material fact; that the defendant would not have delivered this policy to the said Hall had he not stated to the agent that he had already dropped his Star insurance. The plea then alleges that at the time said Hall made the above statements, and at the time he made the application and the policy was delivered to him, he had the two other policies in the Star Accident Insurance Company mentioned in the pleas hereinbefore set forth; that the statements to the agent that he had dropped this insurance and that the same was canceled were false and fraudulent; that thereby the policy became null and void, etc.

Where a written application is required to be signed by the assured, and is so signed, and a policy of insurance is issued upon the application, as was the case here, the application and the policy constitute a written contract by and between the assured and the insurance company, and where a controversy arises in regard to what the contract is between the parties, that controversy

must be determined by the application and the policy. But here the insurance company, by the pleas under consideration, is not willing to have the matter in dispute settled by the terms of the application and policy issued upon it, but it desires to resort to parol evidence to establish an agreement different from the one established by the application and the policy. That cannot be done. A contract of that character cannot rest partly in writing and partly in parol. It cannot be varied, explained or added to by parol evidence. "Parol evidence of what passed at the time of making a policy is not admissible to restrain the effect of the same. * * * No usage of an insurance company, nor even the express agreement of the parties, whether made previous to or at the time of the execution of the policy, can be admitted to explain, modify or control the written contract." (May on Ins.— 3d ed.—sec. 579.) Biddle, in his work on Insurance, says: "When the contract of insurance is reduced to writing, the prior negotiations of the party in respect of it are deemed to be merged in the document, which in law is conceived to be the evidence of the agreement they finally fix upon, and parol evidence is inadmissible to vary its terms. The rule just stated does not depend upon any rule of evidence, in the opinion of the writer; but it is submitted the real ground is, that by a fundamental rule of substantive law an agreement reduced to writing is supposed to contain the parties' meaning, and therefore parol evidence cannot be admitted to vary it." (Sec. 523.) The same doctrine is announced in Bliss on Life Insurance, page 653.

Here the contract was reduced to writing. It is found in the application and the policy, and in that contract will be found the statement that Hall had $5000 insurance in the Atlas Insurance Company and $10,000 in the Star. But the defendant undertakes to change that written contract by proving that the deceased, before the policy was delivered, said he had only $5000 in the Atlas and

none in the Star,—that he had dropped the insurance in the Star. The admission of such evidence would be in direct conflict with the rule of law declared in the authorities cited. When Hall disclosed the fact, by his application in writing, that he had $5000 in the Atlas and $10,000 in the Star, if his application was not satisfactory it was the plain duty of defendant to reject the application. If the company was willing to insure Hall in case he would drop the Star, it was its duty to notify Hall that it could not insure him under the application he had submitted, but that if he would drop the insurance in the Star, and after it was dropped make a new application to the company showing that the only insurance which he then had was $5000 in the Atlas, it would then issue a policy to him. The company would then have been protected. This course, however, was not pursued, but the company, after being notified by the application that Hall had $10,000 in the Star, undertook to rely on a side agreement resting in parol, to the effect that Hall would in the future drop the insurance which he had in the Star. Such an agreement cannot be pleaded as a defense to an action on the policy in a case of this character. We think the pleas were bad and the demurrer was properly sustained.

It is also claimed that the proof failed to show that Hall was injured by accidental violence, or that his death was the result of external, violent and accidental means. The sufficiency of the evidence was a question of fact for the jury, and the judgment of the Appellate Court affirming the judgment of the circuit court is conclusive on questions of fact.

The judgment will be affirmed.

*Judgment affirmed.*