## Ira Summerville et al., Appellants, v. Martin Klein, Appellee.

1. INSTRUCTIONS—*when should be accurate.* The instructions should be particularly accurate where the case is close upon the facts.

2. INSTRUCTIONS—*rules of law governing.* An instruction should be refused which is indefinite in its terms and which does not announce a principle of law applicable to the facts.

3. INSTRUCTIONS—*particular phrase condemned.* It is rarely proper for the court to instruct the jury as to the "state of the proof" of any portion of a case.

4. INSTRUCTIONS—*upon what must be predicated.* Instructions are improper which are not predicated upon any evidence in the cause.

5. CONTRACTS—*when cannot be varied by parol.* An unambiguous contract cannot be altered, varied, modified or explained by parol.

Assumpsit. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Reversed and remanded. Opinion filed March 18, 1908.

ALBERT D. RODENBERG and CHARLES H. HOLT, for appellant.

W. F. BUNDY and FRANK F. NOLEMAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in *assumpsit* by appellants to re-

cover $250 claimed to be due them as commission, un-
der a contract with appellee, giving them the sale of
his farm.

The declaration contained a special count upon the
contract and the common counts. Appellee filed a
plea of the general issue and two special pleas, one
alleging that at the time of making the agreement for
the sale of the premises in question, it was expressly
stipulated that appellants would not sell them to Louis
Klein, appellee's brother, and that the sale for which
appellants were claiming commissions had been made
to said Louis Klein; and the other that appellee did
not make and deliver the contract in writing declared
upon, this plea being under oath. The jury gave a
verdict in favor of appellee and judgment was ren-
dered against appellants for costs.

On April 17, 1906, as it appeared from the proofs,
appellants who are father and son, were engaged in
the real estate business in Centralia, Illinois, doing
business as the Summerville Realty Co. Appellee
who also resided in Centralia, owned a farm of 160
acres some four or five miles from that place. He was
a Frenchman with an imperfect knowledge of the Eng-
lish language. Appellants testified that on the day
named, appellee came to their office and in their pres-
ence signed an agreement, employing them to sell his
farm. The agreement claimed to have been signed by
appellee, was introduced in evidence and consisted of
a printed card, a portion of which contained blanks
which were filled in with writing. The first part of
the card, contained a description of the premises, with
information concerning the house, barn, well, fruit
trees, etc., and stated the list price at $5,000. The
latter portion of the card was as follows: "I hereby
list for sale with the Summerville Realty Co. authoriz-
ing them to negotiate a sale and sell the above de-
scribed property and in consideration of their listing,
I agree that they shall be the sole salesmen of the
same. I agree to furnish a sufficient and properly

executed warranty deed, with abstract to date of sale showing good title. In consideration of their services and advertising, I agree that if a sale or transfer of the property is effected, directly or indirectly through their efforts, to pay them a commission of five per cent. of the price for which it may be sold. April 17, 1906.''

Appellants further testify that after the son had made out and appellee had signed the agreement, he started to make a copy of the same, but that after the same was partially filled out, appellee said it was not necessary, and the copy was not completed. The father testified that when appellee left the office, he took the partially filled copy with him. Appellee and his daughter testified that the contract was not entered into at appellants' office, but that the son came to their house about ten o'clock on the morning of the day named, and in their presence made out the contract; that the son misrepresented it to appellee, telling him it was only a description of the property and furnished appellee what he represented to be a copy of the paper appellee had signed; that the purported copy contained that portion of the contract which related to the price and description of the premises, while that part listing the farm and agreeing to pay commission, which is above set forth in full, was scratched out. The copy was produced by appellee on the trial and it appeared that the latter portion was marked out with different ink from that used in writing in the blanks in the descriptive part.

Appellee testified that he told the son and it was agreed betwen them at the time, that appellants should not sell the farm to Louis Klein, appellee's brother, and that the son said at that time he would have a buyer down in two or three days. Appellee further testified that he had never been in appellants' office and did not know where it was.

In November, 1905, appellee had sold an option for the coal underlying the premises to another person

and while this was known to appellants by hearsay, appellee said he never mentioned it at the time the contract was made nor was that fact mentioned in the contract. Appellants on May 15, 1906, made a contract in writing with Louis Klein for the sale of the premises, for the sum of $5,000, upon the delivery of a warranty deed properly and sufficiently executed, with an abstract to date showing good title. It appeared from the evidence of the son, Ira Summerville, that while Louis Klein was to pay $5,000 cash for the premises, appellants were to divide their commission with him; that they were to give him $100 so that the place would only cost Louis Klein in fact $4,900. After making the contract with Louis Klein, appellants applied to appellee for a deed on several occasions, but appellee on each occasion refused to execute one. The first time appellee was requested to make a deed he gave as a reason for refusing, that he did not want to sell his farm, that it was getting late and he had concluded to sell his coal. Upon the second occasion, a few days later, he refused because the land was to be conveyed to his brother Louis Klein, and on the third occasion in refusing to make the deed, he said his land had coal under it, that the land in the vicinity was going up and he thought his land was worth more money; also that he would not under any circumstances sell the farm to his brother Louis, that he despised and hated him and would not sell to him. Finding it impossible to obtain a deed from appellee to his brother Louis, appellants brought this suit.

It was shown upon the trial that Louis Klein had the ability and stood ready to purchase the farm at the price agreed upon and that he had been induced to become the purchaser through the efforts of appellants.

A number of reasons are urged by appellants why the judgment should not be permitted to stand, the principal ones being that the verdict was contrary to

the evidence and that the court erred in its rulings upon the evidence and in passing upon the instructions. There was a sharp conflict in the evidence introduced by the respective parties but we desire to express no opinion concerning that question, further than to say that the case was a very close one upon the facts and that it was therefore important the jury should be accurately instructed as to the law. Street R. R. Co. v. Dougherty, 170 Ill. 379; Sinnet v. Bowman, 151 Ill. 146; I. C. R. R. Co. v. Smiesni, 104 Ill. App. 194.

Six instructions were given for appellee. The second was as follows: "The court instructs the jury that the plaintiff, Ira Summerville, testified that he had agreed with Louis Klein, defendant's brother, that he would allow him $100 of plaintiff's commission, and in such state of the proof, the recovery of this $100 is a question for you to determine in this case in the light of all the testimony." We do not understand how the promise of Ira Summerville either to divide the commission to the extent of $100 with Louis Klein or to give him $100 of his own money, as he also testified, could affect appellee or be used as a defense for him in this case. Even if the proposed disposition of the $100 was a proper subject of defense, the instruction in regard to it is indefinite and does not attempt to lay down any principle of law to guide the jury under the conditions of the evidence alleged by the instruction to exist. It may be further said that it is rarely proper for the court to instruct the jury as to the "state of the proof" in regard to any portion of the case. The third instruction given for appellee told the jury, if they believe from the evidence that the coal under the farm in question was optioned at the time of the listing in question and that the plaintiffs knew it and the defendant reserved the coal from said listing, then the defendant would not be required to make a deed without reserving the coal and the plaintiffs could not recover commission

for sale of the farm unless the coal was reserved. There was nothing said in the written contract relied on by appellants concerning the reservation of the coal underlying the land, and appellants claim they had no positive knowledge concerning that question.

Appellee while he denies making the written contract and says the contract between him and appellants was an oral one, also says that at the time of listing his farm with appellants, he "did not talk to Summerville about the coal." This instruction appears to assume the claim of appellee that there was no written contract for the sale of the land to be true and then tells the jury defendant would not be required to make a deed and plaintiffs could not recover commission if they believed from the evidence the "defendant reserved the coal from said listing," when the defendant does not claim that he did so. The instruction therefore was not based upon the evidence in the case.

The fourth instruction told the jury, if they believed from the evidence that at the time of the listing of the farm in question, the defendant and plaintiffs agreed that the farm was not to be sold to the defendant's brother Louis Klein, then the plaintiffs could not recover commission for selling the farm to defendant's brother. If the written or printed contract relied upon by appellants was executed by appellee then this instruction was not proper, as the previous agreements and conversations between the parties were merged in the contract. There was no ambiguity in this contract and its language was simple and free from technical terms so there was no need of parol evidence to explain it, and it could not be varied or contradicted by such evidence. 9 Enc. of Law and Procedure, p. 773; Commercial Mutual Accident Co. v. Bates, 176 Ill. 194; Town of Kane v. Farrelly, 192 Ill. 521.

This instruction necessarily assumed that the contract was the parol one relied on by appellee and not

the written or printed one relied upon by appellants, which was a question of fact for the jury and not the court.

The fifth instruction given for appellee was subject to the same objections as the fourth, as well as others. The sixth instruction refers to the coal underlying the premises and is subject to the same criticism as the third, but it has the additional vice that it tells the jury that before plaintiffs could recover, they must prove by a preponderance of the evidence that defendant gave them the exclusive contract to sell his farm, including the underlying coal, etc. The question whether the contract was exclusive or not could not possibly be of any moment under the facts in this case, nor does it appear to have been otherwise raised on the trial.

Appellee's defense to the claim of appellants was that he never executed and delivered the written or printed contract and that appellants failed to comply with the terms of the conditions of the oral contract, which appellee says he did enter into, and the question whether appellee had listed his property with or given the contract to any one else for its sale, could not affect appellants' right of recovery. There were also errors in the rulings of the court in regard to the evidence, which it is not necessary to discuss as what is above said concerning the instructions presents suggestions which will readily prevent their occurrence upon another trial.

For the errors above indicated the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*