JAMES B. MILLER, Appellant, *vs.* MILTON SUTLIFF *et al.* Appellees.

*Opinion filed October 26, 1909.*

1. FRAUD—*to be a fraud in law a representation must be an affirmance of a fact.* To constitute a representation a fraud in law, such as will justify setting aside an ordinary transaction of bargain and sale, the representation must be an affirmance of a fact and not a promise to do something in the future; and while a statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent representation, it must amount to more than an agreement to do something in the future.

2. SAME—*intention not to perform does not amount to fraud.* A mere breach of contract in an ordinary business transaction does not constitute fraud in law, and neither the promisor's knowledge of his inability to perform nor his intention not to perform will make the transaction fraudulent, as the rule applicable to conveyances made in consideration of the support of the grantors for life does not apply to ordinary bargains and transactions for gain.

3. DEEDS—*when a deed will not be set aside as for fraudulent misrepresentations.* Failure of the grantees of a coal right to keep their agreements (which constituted the sole consideration for the deed) to move a large industry upon the grantor's land, build a railroad, employ a large force of men and to mine the coal and deliver grantor's share to him free of charge, is not such fraud as justifies setting aside the deed and canceling it as a cloud on title.

APPEAL from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

GEORGE J. JOCHEM, for appellant:

Statements of intention with no intent to perform them, if they induced action, are fraudulent and grounds for equitable relief. Bispham's Eq. Jur. (7th ed.) 318; *Godwin* v. *Horne,* 60 N. H. 486; *Stebbins* v. *Petty,* 209 Ill. 293; *Murray* v. *Tolman,* 162 id. 417; *Pickard* v. *McCormick,* 11 Mich. 68; *Jones* v. *Neely,* 72 Ill. 449; 14 Am. & Eng. Ency. of Law, (2d ed.) 49.

The failure or neglect of the defendants to carry out these promises presumes a fraudulent intent in entering into the contract. *Jones* v. *Neely,* 72 Ill. 449; *Frazier* v. *Miller,* 16 id. 50; *Stebbins* v. *Petty,* 209 id. 293.

Failure to perform a promise made with fraudulent intent is a sufficient ground for equitable relief. 14 Am. & Eng. Ency. of Law, (2d ed.) 49.

While the consideration named in the deed cannot be denied for the purpose of invalidating the deed, nevertheless the true consideration of the deed can be shown to show that there was either a failure of consideration, which would invalidate the deed, (*Jones* v. *Neely,* 72 Ill. 449; *Stannard* v. *Railway Co.* 220 id. 469;) or that there was fraud in obtaining it. *Wood* v. *Stone,* 85 Ill. 603; *Harris* v. *Dumont,* 235 id. 435.

FRANCIS H. TICHENOR, for appellee:

The consideration in a deed cannot be disproved for the purpose of defeating the conveyance or affecting its legal import. Jones on Real Estate and Conveyancing, sec. 301; *Kimball* v. *Walker,* 30 Ill. 482; *Morris* v. *Tillson,* 81 id. 607; *Sprigg* v. *Bank,* 14 Pet. 206; *McCalla* v. *Bane,* 45 Fed. Rep. 828; *Peck* v. *Vanderberg,* 30 Cal. 11; Herman on Estoppel, sec. 246; Washburn on Real Prop. 619, 328; Rawle on Covenants of Title, 258.

Where a party claims fraud has been perpetrated upon him in a certain transaction, he must, upon discovery of the facts, promptly declare his purpose to repudiate it and adhere to it. If he remains silent or takes no active steps in the assertion of his alleged rights he will be held to have waived any objections and rights in the premises, and will be conclusively bound, in connection with the transaction, to the same extent as though the fraud had not occurred. *Day* v. *Improvement Co.* 153 Ill. 293; *Grymes* v. *Saunders*, 93 U. S. 55; *Linington* v. *Strong*, 107 Ill. 295; *Kelsey* v. *Snyder*, 118 id. 544; *Strong* v. *Lord*, 107 id. 25; *Dowden* v. *Wilson*, 108 id. 257; *Brown* v. *Brown*, 142 id. 400; *Greenwood* v. *Fenn*, 136 id. 146; Pomeroy's Eq. Jur. secs. 897, 964, 965.

Promises relating to acts to be performed in the future, even though made with no intention of carrying them out, are not such representations as amount to fraud in law, and such promises cannot be made the foundation for the interposition of a court of equity to avoid or nullify what the parties have done. The rule is effective even though the promises in question influenced the consummation of the transaction. *Day* v. *Improvement Co.* 153 Ill. 293; *Gage* v. *Lewis*, 65 id. 604; *Railway Co.* v. *Titterington*, 84 Tex. 218; *Gallagher* v. *Brunel*, 6 Cow. 346; *Knowlton* v. *Keenan*, 146 Mass. 36; *Pasley* v. *Freeman*, 3 T. R. 51; *Haenni* v. *Bleisch*, 146 Ill. 262; Kerr on Fraud and Mistake, 88; Bigelow on Estoppel, 481; *Accident Co.* v. *Bates*, 176 Ill. 194; *Murphy* v. *Murphy*, 189 id. 360; *Kitson* v. *Farwell*, 132 id. 327; *People* v. *Healy*, 128 id. 9.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James B. Miller filed his bill of complaint in the circuit court of Peoria county against Milton Sutliff, Dwight R. Chapman, Moses J. Richards and their unknown heirs, and Augustus E. Scott, praying the court to set aside a

deed made by the complainant to Sutliff, Chapman and Richards of the undivided one-half of the coal and mineral underlying the lands of the complainant, and a deed of the same made to said Augustus E. Scott, and to declare the same void and a cloud upon complainant's title. The service was by publication of notice, and Augustus E. Scott alone appeared and demurred to the bill. The court sustained the demurrer and dismissed the bill for want of equity, and this appeal was taken from that decree.

The material facts alleged in the bill and admitted by the demurrer to be true are as follows: On October 1, 1869, the complainant was the owner and in possession of nine hundred acres of land in Peoria county, under which there were deposits of coal. The lands were in a rural community, with no railroad nearer than seven miles, and no markets other than the city of Pekin, eight miles distant, and Peoria fifteen miles, from the lands. On that day the complainant, with his wife, executed a deed to Milton Sutliff, Dwight R. Chapman and Moses J. Richards, three of the defendants, conveying the undivided one-half of all the coal and other minerals under said lands. The deed recited a consideration of $400, and that it was made in pursuance of a contract subsisting by and between the complainant and Chapman and Phillips and by them performed. There was, in fact, no consideration paid, but the complainant was induced to make the deed by representations and promises of said defendants made first at a meeting at the farm of one of his neighbors, and afterward at a meeting held at a public school house, and finally when the conveyance was made. The representations were, that said defendants were the owners of large foundries, smelters, coke ovens and iron mills near Youngstown, Ohio; that they were men of large means and resources; that the supply of coal such as was used in their industries had practically become exhausted at their present location, necessitating a removal of the industries, and that they would remove the industries

to complainant's locality if they could find and obtain in sufficient quantities a suitable kind of coal. These representations were first made to secure the privilege of boring and prospecting for coal, and after prospecting and making borings said defendants stated that they had found suitable coal in sufficient quantities, and if the complainant and his neighbors would convey to them the undivided one-half of the coal and other minerals underlying their lands they would immediately remove their plants and industries to the locality and would employ a great number of men and build a railroad giving facilities for transportation. They represented to the complainant that if he would make the conveyance they would locate one of their plants upon his premises and the remainder in the vicinity and would proceed at once toward opening up mines on his land, and that they would mine the coal at their own expense, utilizing their portion thereof, and deliver to the complainant, at the mouth of the mine, his one-half, free from all costs and expenses whatsoever. They had already surveyed and set stakes on complainant's land for a railroad to transport their machinery and supplies, and represented that before the winter they would have the construction of the railroad under way, and that they then had one of their plants in Ohio in course of transportation, and had a steamboat in the Ohio river loaded with machinery and ready to start for this locality. The complainant relied upon the representations and executed the deed in consideration of the same and the promises of the said defendants, without any other consideration, but said defendants did not perform any of their agreements and took no steps toward fulfilling any of their promises. They were never on the premises after they received the deed, but refused, and still refuse, to carry out their promises. The complainant has been in possession of the premises ever since, and neither said defendants, nor anyone claiming under them, has ever been in possession of the subject matter of the conveyance.

Dwight R. Chapman, shortly after receiving the deed, conveyed a portion of his interest to James H. Morrow, a relative, and, together with Morrow, organized the Buckeye Coal Company. Afterward one Richard C. Flower acquired the remaining interest of Chapman and the interest left by Morrow on his death, and Flower conveyed to the Illinois Coal and Coke Company by quit-claim deed. The Illinois Coal and Coke Company conveyed, as security, by trust deed to the American Loan and Trust Company. The coal rights were sold in pursuance of a decree of foreclosure of the trust deed to the Peoria Coal and Mining Company, and the assets of the Peoria Coal and Mining Company were sold under a receiver's sale to W. T. Abbott, who assigned his certificate of purchase to A. A. Gleason and a master's deed was made to Gleason. On February 24, 1903, Gleason by a quit-claim deed conveyed all of his interest to Augustus E. Scott. All of the conveyances were made and received with knowledge of the facts and the rights of the complainant and with the notice derived from his possession.

In order to constitute fraud in law a representation must be an affirmance of a fact and not a mere promise or matter of intention. While a statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent misrepresentation, it must amount to an assertion of a fact and not an agreement to do something in the future. (2 Pomeroy's Eq. Jur. sec. 877; 14 Am. & Eng. Ency. of Law,—2d ed.—47; Kerr on Fraud and Mistake, 88; *Day* v. *Ft. Scott Investment and Improvement Co.* 153 Ill. 293.) If a promise is made to do something in the future and at the time it is not intended to perform the promise, that fact does not constitute a fraud in the law. (Bigelow on Estoppel, 481; *Gage* v. *Lewis,* 68 Ill. 604; *People* v. *Healy,* 128 id. 9; *Kitson* v. *Farwell,* 132 id. 327; *Commercial Mutual Accident Co.* v. *Bates,* 176 id. 194.) If an intention not to perform constituted fraud, every transaction

might be avoided where the facts justified an inference that a party did not intend to pay the consideration or keep his agreement. A mere breach of a contract does not amount to a fraud, and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent. The bill in this case states no representation as to any past or existing fact except that the kind of coal used in the plant near Youngstown, Ohio, had become exhausted, necessitating a removal of the plant to a locality where such coal could be found, and that the defendants had a steamer in the Ohio river loaded with iron and machinery for removal, and there is no averment that either of these representations was false. The other averments of the bill amount simply to charges that the defendants to whom the deed was made failed to perform their promises, which constituted the sole consideration for the deed. The averments of the bill are not sufficient to charge fraud in obtaining the deed.

There is a class of cases relied upon by appellant which are exceptional in character and where decisions rest upon reasons not applicable to ordinary business transactions like this one. The cases begin with *Frazier* v. *Miller,* 16 Ill. 48, and there are a number of them where conveyances have been made in consideration of promises to support and take care of the grantors in the future. In the first case the difference between such conveyances and ordinary transactions was pointed out, and it was said that Miller had surrendered all—home and property—at once, and become wholly dependent upon Frazier for subsistence and shelter as well as a house and domestic comforts and enjoyment of society; that to be treated with unkindness, harshness and blows, under those circumstances, as a fulfillment of the obligation for a house, shelter, food, raiment and social and domestic happiness, was more than human nature could bear or a court of equity tolerate; that the contract on the part of Frazier was executory, and that no assessment of

damages could be made to meet the estimate of the costs of support. The court said that, so far as providing means for support was concerned, a decree for specific performance could be enforced, but the personal deportment and kindness indispensable to happiness in the family could not be enforced. In such cases the usual circumstances of age, feebleness and decline, when the grantors give up their earthly possessions for the consideration of maintenance and kind treatment, have been considered sufficient to call upon a court of equity to treat the contract as abandoned as well as entered into with fraudulent intent. The rule adopted in those cases does not apply to ordinary bargains and business transactions for gain.

It is not to be inferred that the representations of the three defendants as to what they would do, and which constituted the sole consideration for the conveyance, gave rise to no right in the complainant or that the right would not be enforced or relief granted by a court of equity. In an action at law there could be no measurement of the damages for a failure or refusal to remove the industries; to employ a large number of men, which would create a village or city; to build a railroad, or to mine and deliver at the surface, free of cost to the complainant, his share of the coal. A court of law could not afford any efficient or adequate remedy for the breach of obligations of that kind. But the remedy that might be given is not the one sought by this bill. The court correctly decided that the facts alleged were not sufficient to establish the charge of fraud in obtaining the conveyance or to justify declaring the deed void and removing it as a cloud upon complainant's title.

The decree is affirmed.      *Decree affirmed.*