**Louis W. REPSOLD, Jr., Plaintiff-Appellant,**

v.

**NEW YORK LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 11084.**

United States Court of Appeals, Seventh Circuit.

Nov. 1, 1954.

**480**

George C. Bunge, George Hamilton Bunge, Chicago, Ill., for appellant.

Wendell J. Brown, Joseph A. Dubbs, Chicago, Ill., Lee M. Gammill, Harry J. McCallion, New York City, of counsel, for defendant-appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal from a summary judgment entered in favor of defendant in a suit at law brought by an insurance agent against the defendant for additional monies arising out of services that were rendered by him during the period he sold policies for defendant, allegedly from 1936 to 1950. During that period he operated from 1936 to 1946 under one set of contracts which in 1946 was exchanged for another set of contracts, under which he operated until 1950, when his agency contract was terminated. The action was for damages, plaintiff claiming that his discharge by defendant was without cause and in bad faith, for the purpose of depriving him of deferred compensation and pension rights.

The complaint alleges that in or about the year 1936, defendant employed plaintiff as a soliciting agent for life insurance and annuity policies and agreed to pay him certain commissions therefor; that at the same time they entered into a written agreement providing for a system of agents' benefits known as "Nylic;" that said Nylic agreement, inter alia, provided that after he had been in defendant's employ for 20 consecutive years, plaintiff would receive an additional income in a gradually increasing amount, based on insurance previously written, as long as he remained in defendant's employ, and also a pension in the event he should become disabled or should leave defendant's employ; and said Nylic agreement also provided that all of the benefits should be available to plaintiff provided only that he wrote insurance of at least $50,000 per year. The complaint also charged that to procure execution of said contracts and agreements by plaintiff, defendant represented that plaintiff would be entitled to the benefits of the Nylic agreement if he remained in the employ of the defendant in the various periods specified therein, and that to qualify for the benefits thereof it was necessary to produce only a minimum of $50,000 of insurance per year, and he would thereby obtain valuable pension rights, as well as the other benefits therein specified, and plaintiff, relying upon said promises and representations, was induced to enter into the employment contract and Nylic agreement.

The complaint alleges that plaintiff did produce in excess of $50,000 of insurance per year; and that in or about the year 1946, defendant requested plaintiff to surrender the existing contracts and in lieu thereof to enter into a new contract and Nylic agreement, called "Modified Nylic No. 4," defendant representing to plaintiff that these instruments gave him more liberal rights, privileges and benefits, and preserved to him all of the rights under the prior agreement; that, relying upon these representations, on or about October 14, 1946, plaintiff surrendered the 1936 documents and executed those tendered to him as aforesaid; and he continued to perform all duties required under the new contracts and to write in excess of $50,000 of insurance per year; that during the year 1948 defendant notified plaintiff that his rights under the contract and Nylic agreement were terminated, which action defendant rescinded; that under date of June 14, 1950, defendant again notified plaintiff that his contract and Nylic rights were terminated, effective 30 days from the day thereof, and later refused to supply plaintiff with any information as to the amount of insurance written by him and the amount of compensation or commission earned during his 14 years of service for the defendant, on the ground that defendant had the right to terminate plaintiff's contract and Nylic rights at any time, both with or without cause.

The complaint also charges that during and prior to 1946 defendant formed the purpose and intent of terminating plaintiff's contract and depriving him of his Nylic rights, particularly the pension rights which would accrue to plaintiff, not because of any failure of plaintiff to perform his duties, but in order to avoid paying him the income and pension provided in the Nylic agreement; that, in furtherance of such purpose and intent, defendant induced plaintiff to surrender his original contract and Nylic agreement and to accept in lieu thereof the 1946 contract and Modified Nylic No. 4 agreement, containing a clause purporting to give defendant the right to cancel same "with or without cause;" that the subsequent termination, without cause, was in furtherance of such intent and purpose; that defendant did not enter into the 1946 contract and Nylic agreement in good faith, but with the intent and purpose of depriving plaintiff of any substantial benefits thereunder by cancelling same before such benefits should accrue.

In the alternative, complaint charged that in the event the 1936 contract contains a provision authorizing defendant to cancel same without cause, defendant formed the purpose and intent of cancelling both contract and Nylic agreement, before he should become entitled to any substantial income or pension right thereunder.

The complaint alleges that plaintiff has been greatly damaged by the aforesaid "malicious and unconscionable acts" of the defendant, wherefore he seeks punitive as well as compensatory damages.

Defendant's answer attaches copies of the documents mentioned in the complaint and quotes paragraph 19 of the 1936 agent's contract:

"19th. Either party hereto may without cause terminate this agreement upon written notice, said termination to become effective thirty days from the day on which such notice is dated."

The answer states that the Nylic agreement, known as "Nylic No. 3," provided in part:

"XVII. The termination of the employment agreement of any member of Nylic, whether for cause or otherwise, prior to becoming a Senior Nylic, or the removal of an agent, prior to becoming a Senior Nylic, to any country where Nylic is not being granted, shall automatically terminate his Nylic membership.

"XIX. The termination of an agent's Nylic Rules, whether by virtue of the termination of his employment agreement or otherwise and whether automatically or otherwise, shall terminate all his rights

and benefits under Nylic and no further payments of any kind shall be due him on account of Nylic. Should said agent again become a member of Nylic no credit whatsoever shall be allowed because of his former membership."

The answer denies that any statements or representations as alleged in the complaint were made by defendant and also denies plaintiff's performance of all duties or requirements contained in the agent's contract and Nylic agreement.

The answer admits the execution of the contract and Modified Nylic No. 4 agreement in 1946, and attaches copies thereof.

It quotes the provisions of paragraph 11 of the agent's contract of 1946 and paragraphs 13 and 15 of the "general rules" contained in Modified Nylic No. 4 agreement, which are hereinafter set forth.

The answer also denies that plaintiff performed all duties and requirements contained in the 1946 contract and agreement, but admits that in 1948 it notified plaintiff of termination of said agency agreement of 1946, which was reinstated on July 7, 1948, and admits that under date of June 14, 1950 it notified plaintiff of termination of agent's contract of 1946, said termination to become effective 30 days after the date thereof.

The answer denies the other allegations of the complaint.

Defendant caused to be taken a discovery deposition of the plaintiff in which the various contracts and agreements mentioned in the pleadings were identified by the plaintiff and were attached to the deposition. They contain the provisions above quoted from the answer.

In his deposition plaintiff acknowledged that he signed the following document dated August 23, 1946, and addressed to defendant:

"I wish to avail myself of the opportunity to qualify for membership in Modified Nylic No. 4 and hereby request New York Life Insurance Company to permit me to exchange the agency agreement under which I am now operating for a Soliciting Agent's Contract Form MN4-46 and provided said request is granted, I agree to surrender any and all rights, benefits and privileges I may have under or with respect to the Nylic plan under which I am now eligible to qualify for membership."

He also testified that he signed the following instrument on October 14, 1946:

"I, the undersigned soliciting agent, hereby, represent that I have read the foregoing terms, provisions, conditions and rules of Modified Nylic No. 4.

"I understand and hereby agree that Modified Nylic No. 4 is the only plan or system of benefits for soliciting agents of New York Life Insurance Company under which I may hereafter qualify for membership or for continued membership and that I shall have no rights thereunder except in accordance therewith.

"I further understand and hereby agree that as of and from the effective date of my Soliciting Agent's Contract on a form which complies with condition (a) on page 3 of Modified Nylic No. 4, I shall have no further rights, benefits or privileges under or with respect to Nylic No. 3 and I hereby surrender and release to said Company my membership, if any, therein together with all such rights, benefits and privileges."

He also testified that he got the written notice of termination dated June 14, 1950, on or about that date, addressed to him, reading:

"Please Take Notice that New York Life Insurance Company hereby terminates your Soliciting Agent's Contract with it which took effect as of July 18th, 1946, said termination to become effective thirty

(30) days after the date hereof. The Company reserves all its rights.

Yours very truly,
/s/ Dudley Dowell,
Vice President."

Plaintiff filed his affidavit after the deposition was taken, stating, in part:

"Then on June 14, 1950, deponent was notified that his agreement with the Company would be terminated in 30 days, a copy of which notice is attached to defendant's answer, as Exhibit C. * * * "

In this affidavit he claimed that he was entitled to renewal commissions on $22,000 of business which he procured during the last 362 days he was with the defendant.

Defendant made a motion for summary judgment in its favor, based upon the pleadings, plaintiff's discovery deposition, and affidavit and supplemental affidavit of Clarence Skogler, and the court considered said motion so supported and also considered the affidavit of plaintiff in opposition thereto. The affidavit of Skogler alleges that cancelled checks and the records of defendant show that plaintiff was paid in full by defendant for commissions, monies and benefits payable to him for services rendered by him to defendant; that monthly Nylic payments were made to plaintiff on, to and including the last monthly payment which came due June 17, 1950, his monthly payments being $32.63 the 17th of each month from July 18, 1949 to July 14, 1950 inclusive.

The court entered summary judgment for defendant from which plaintiff appeals.

1. Rule 56(c) of the Federal Rules of Civil Procedure [1] provides, in part, that a summary judgment:

" * * * shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The court is authorized under the plain provisions of this rule to summarily determine whether or not a bona fide issue of fact exists between the parties to the action. A determination by the court that such issue is presented makes the rule inoperative. On the other hand, if the pleadings, and proof in the form of depositions, affidavits and admissions on file, disclose that no real cause of action or defense exists, the court may determine that there is no issue to be tried by a jury and may grant a summary judgment.

Rule 56 does not provide any method for exactly determining the presence of an issue of fact, and so each case depends upon the facts peculiar to it. Speaking in general terms, the court is not authorized under the rule to try issues of fact but it has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried.

The rule should not be used by the court for the trial of disputed questions of fact upon affidavits, but when it is invoked by either party to a case and a showing is made by the movant, the burden rests on the opposite party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint, or if a defendant, that he has a ground of defense fairly arguable and of a substantial character. Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, at page 877.

2. In the case at bar it appears from the admitted averments of the pleadings and the sworn deposition of plaintiff that the material facts are uncontroverted. They are:

a. The 1936 agent's contract provided that either party might without cause terminate said agreement upon written notice, to become effective 30 days from

1. Rule 56(c), 28 U.S.C.A.

the day on which such notice was dated, and the 1946 agent's contract had substantially the same provision.

b. Plaintiff got the written notice of termination dated June 14, 1950, on or about that date, addressed to him and notifying him that defendant terminated his contract effective 30 days after said date.[2]

c. In 1946, by letter addressed to defendant, plaintiff stated a wish to qualify for membership in Nylic No. 4 and to exchange the 1936 agency agreement for a 1946 contract, agreeing if said request were granted, to surrender all rights, benefits and privileges under the existing Nylic plan.

d. Thereafter in 1946 he acknowledged in writing over his signature that he had "read the forgoing terms, provisions and rules of Modified Nylic No. 4" and that it "is the only plan or system of benefits * * * under which I may hereafter qualify for membership or for continued membership and that I shall have no rights thereunder except in accordance therewith * * * and I hereby surrender and release to said company my membership, if any," (in respect to Nylic No. 3) "together with all such rights, benefits and privileges."

These facts disclose that he has no real cause of action against defendant based on the documentary evidence. All of his rights under the 1936 documents were apparent from a reading thereof. He exchanged them for the 1946 documents and expressly released all rights, benefits and privileges under the 1936 agreement (Nylic No. 3) and stated that he understood that the 1946 instrument known as Modified Nylic No. 4 was the only plan or system under which he might thereafter qualify for membership and that he should have no rights except in accordance therewith.

Paragraph 11 of the 1946 agent's contract reads:

"11. Either party hereto may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated."

Paragraphs 13 and 15 of "general rules" contained in Modified Nylic No. 4 read:

"13. The termination of the agency contract of any member of Nylic, whether with or without cause, prior to becoming a Senior Nylic, shall automatically terminate his Nylic membership.

"15. The termination of a soliciting agent's Nylic membership under any of the terms, provisions, conditions or rules of Nylic, whether by virtue of the termination of his agency contract or otherwise, shall terminate all his rights and benefits under Nylic and no further payments of any kind shall become due on account of Nylic. Should said soliciting agent again become a member of Nylic no credit whatsoever shall be allowed because of his former membership."

These rules must be read and construed together. They are clear and unmistakable. They show that it was not necessary for defendant to state any cause for termination and that the termination not only ended the contract but also terminated plaintiff's Nylic membership and all his rights and benefits under Nylic and that no further payments of any kind would become due to plaintiff on account of Nylic.

Similar provisions in Nylic agreements of defendant were before the court in Bone v. New York Life Ins. Co., 165 Minn. 327, 206 N.W. 452, where the court said:

"But plaintiff argues that nylic benefits are in the nature of, and a substitute for, commissions on renewal premiums, and that discharging him ought not to forfeit nylic payments based upon insurance previously written. * * * Where the language used is plain, positive, and

2. Plaintiff's attempt to raise in this court for the first time an objection to this no-tice on the ground that it was not mailed to him until June 16, 1950, comes too late.

definite, there is no room for construction, and it must be given its natural and obvious meaning. * * The provision that the termination of an agent's contract of employment 'terminates his nylic membership and all his nylic rights' is too clear, positive, and definite to leave any room for construction, and must be given effect according to the plain import of the language used. It was competent for the parties to make such a contract if they chose to do so. Similar provisions are common in contracts between insurance companies and their agents; and, where the contract contains such a provision, it is well settled that the termination of the employment terminates the right to compensation on account of future renewal premiums."

3. However, plaintiff contends that, notwithstanding these provisions of the contracts between the parties, he is entitled to maintain this action because, as he alleges in his complaint, at and prior to the execution of both the 1936 and 1946 contracts defendant intended to terminate plaintiff's contracts and deprive him of his Nylic rights, particularly the pension rights, not because of any failure of plaintiff to perform his duties, but in order to avoid paying him the income and pension provided in the Nylic agreement, and that in furtherance of such intent, the subsequent termination, without cause, took place; that defendant did not enter into the 1946 contract and Nylic agreement in good faith, but with the same intent and purpose. In taking this position plaintiff relies on Busam Motor Sales v. Ford Motor Co., 6 Cir., 203 F.2d 469, which, in applying the law of Michigan, lends considerable support to plaintiff's reasoning. He also points out that there was no question of bad faith on the part of defendant involved in Bone v. New York Life Ins. Co., supra.

█ Both the 1936 and 1946 sets of contracts in the case at bar provide for performance in the state of Illinois. They do not show on their face where they were executed. However, it is significant that, in discussing the aforesaid contention in his brief, plaintiff relies on five Illinois cases. At no place has he even intimated that the law of any forum other than Illinois governs this case. We, therefore, hold that the law of Illinois controls. Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290, in which certiorari was denied in 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142.

█ Matters connected with the performance of a contract are regulated by the law prevailing at the place of performance. Scudder v. Union Nat. Bank, 91 U.S. 406, 412, 23 L.Ed. 245, 249; In re American Fuel and Power Co., 6 Cir., 151 F.2d 470, 475.

There are many state courts which apply the same rule as that followed in Michigan and relied upon in the Ford Motor Co. case, supra. However, the courts of Illinois take a contrary view. 37 C.J.S., Fraud, § 12, p. 240.

It has never been made clear whether plaintiff in the case at bar is suing upon contract or in tort. In view of the various statements of law by Illinois courts, that distinction appears to be immaterial.

In Keithley v. Mutual Life Ins. Co., 271 Ill. 584, at page 586, 111 N.E. 503, at page 504, it was said:

"A promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of an action for deceit. Grubb v. Milan, 249 Ill. 456, 94 N.E. 927; Miller v. Sutliff, 241 Ill. 521, 89 N.E. 651, 24 L.R.A.,N.S., 735; Day v. Ft. Scott Investment and Improvement Co., 153 Ill. 293, 38 N.E. 567; Gage v. Lewis, 68 Ill. 604."

In Miller v. Sutliff, 241 Ill. 521, at page 526, 89 N.E. 651, at page 652, it was said:

"If a promise is made to do something in the future and at the time

it is not intended to perform the promise, that fact does not constitute a fraud in the law: Bigelow on Estoppel, 481; Gage v. Lewis, 68 Ill. 604; People ex rel. Ellis v. Healy, 128 Ill. 9, 20 N.E. 692; Kitson v. Farwell, 132 Ill. 327, 23 N.E. 1024; Commercial Mutual Accident Co. v. Bates, 176 Ill. 194, 52 N.E. 49."

In Gage v. Lewis, 68 Ill. 604, at page 616, it was said:

"A promise to perform an act, though accompanied, at the time, with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void he has no remedy."

In Bielby v. Bielby, 333 Ill. 478, at page 485, 165 N.E. 231, at page 234, it was said:

"A promise made with an affirmative intent not to perform cannot be made the basis of an action for fraud."

■■ Defendant had a legal right to pursue any course provided for in the contracts. Its motives in so doing are not subject to the attack which plaintiff embodies in his charge that the termination of his contracts and deprivation of his rights were in furtherance of an intent existing in defendant's mind when the contracts were executed. Under Illinois law, one who merely exercises his legal rights is not thereby chargeable with fraud. Skidmore v. Johnson, 334 Ill.App. 347, at page 361, 79 N.E.2d 762; and Foutch v. Zempel, 332 Ill. 192, at page 203, 163 N.E. 546.

If plaintiff feels that defendant in relying upon the printed language in the contracts and Nylic agreements, is treating plaintiff harshly, he is confronted with the fact that the instruments that permit this treatment were those which he voluntarily executed. The court cannot make a new contract for the parties.

4. Plaintiff's contract and Nylic agreement and all rights thereunder having terminated on July 14, 1950, his right to receive monthly Nylic benefit payments of $32.63 also terminated on that date. The 1946 Nylic contract provides:

"16. If any member of Nylic * * * shall cease to be a member of Nylic, whatever Nylic monthly income such member may have been receiving shall terminate with the last monthly payment due prior thereto."

Plaintiff was paid his last monthly benefit, due June 17, 1950, three days after the notice of termination of his contract. Before the July 17 payment became due, the contract was terminated. Plaintiff had no right to any monthly payment falling due after June 17, 1950.

■ 5. Plaintiff also claims that he is entitled to the sum of $104.82 as conditional renewal commissions on the $22,000 of business which he brought in during the period from July 17, 1949, to July 14, 1950. The 1946 agency contract provides:

"16. * * * In order to qualify for said conditional renewal commission * * * under policies effected upon applications procured during any Contract Year, the Soliciting Agent must procure under this contract within that particular Contract Year * * * not less than the total amount of $50,000 of new insurance * * * upon which one full year's premium is paid * *."

Since plaintiff did not procure $50,000 of business during the said period, he was not entitled to any conditional commissions on the business which he did procure.

These conclusions justified the entry of the summary judgment in favor of defendant.

For the reasons aforesaid, the judgment below is

Affirmed.

FINNEGAN, Circuit Judge.

I concur in the result reached by the majority.