(No. 18354.—

Samuel Foutch *et al.* Appellants, *vs.* Robert Zempel, *et al.* Appellees.

*Opinion filed October 25, 1928.*

193

GLENN RATCLIFF, and REED F. CUTLER, for appellants.

WILLIAM C. WORLEY, JESSE BLACK, JR., and BOYD & WEBER, for appellees.

Mr. COMMISSIONER CROW reported this opinion:

This cause comes by appeal from an order of the county court of Fulton county dismissing the petition of appellants and other petitioners asking for the establishment of a drainage district. The petition averred that the petitioners are a majority of the owners of the land within the proposed drainage district who have arrived at lawful age and

own and represent more than one-third in area of the land in the proposed district; that they are more than one-third of the owners of the land within the proposed district who have arrived at lawful age and own and represent a major portion of the area of the lands in the proposed district. The name of the proposed district was Spoon River Drainage and Levee District. The several tracts of land to be embraced in the district were stated and the boundaries of the district particularly described. The reclamation and protective project consisted of a system of levees, with the route, starting point and termini particularly stated, with the height, width at top and bottom, with all necessary connections, water outlets, pumping stations, etc., particularly described. To the petition objections were filed by the commissioners of the Zempel Mutual Drainage and Levee District and by certain individual owners of lands within the proposed district. The court heard evidence on the objections and sustained some and overruled others.

The order entered by the court upon the objections found is in substance: (1) The proposed Spoon River Drainage and Levee District contains within its boundaries lands lying within the boundaries of the Zempel Mutual Drainage and Levee District, a district duly and legally organized by the decree of the county court of Fulton county on September 28, 1926; (2) the Zempel district was a legally organized drainage district under the laws of the State of Illinois previous to the filing of the petition for the organization of the Spoon River district; (3) all the lands of the Zempel district, with the exception of about twenty acres, lie within the boundaries of the proposed Spoon River district; (4) at the time of the filing of the petition for the organization of the Spoon River district the Zempel district was a legally organized district, including a part of the territory embraced within the boundaries of the proposed district; (5) there cannot be two legally organized drainage districts occupying the same ter-

ritory. The order was that the objections, based upon facts found, be sustained and that the petition for the organization of the Spoon River district be dismissed at the cost of the petitioners.

Omitting the names of parties to the agreement to organize the Zempel district and the description of lands embraced in the district, it recited that the owners desire to form a drainage and levee district by mutual agreement, as provided by section 75 of the Drainage act of May 29, 1879, as amended; "that in consideration of the above facts it is agreed by the said owners of said land to form a drainage and levee district, and the parties hereto do hereby form a drainage and levee district by mutual agreement under the statute, to be composed of the above described land. [Description of the land.] To accomplish the reclamation and protection of said land it is proposed to construct a system of levees around said land of sufficient height and breadth to protect said lands from overflow, and also to construct ditches and drains and clean out the ditches and drains now on said lands sufficiently to drain said lands to the natural outlets and streams and ditches now carrying the waters from said lands, and also to erect a pumping plant near the southwest corner of the west half of the northwest quarter of section 23 for the purpose of pumping the water which will naturally be carried from said district by the stream now flowing out at said point, over the levee which it is proposed to erect at said point, and also a pumping plant, if necessary, to pump the water which will be gathered by the ditch which was constructed by a former drainage district long since dissolved, to pump the water over any levee that may be erected, at a point where said ditch leaves and carried the water out of this district; * * * and it is agreed that * * * the more specific description and decision as to the work to be done in said district, the apportionment of damages, the classification of the lands, and the amount of assessments or taxes to

be levied shall be left to the discretion and judgment of the drainage commissioners."

The lands composing the Zempel district lie in a compact body in sections 14, 15, 22 and 23, grouped principally around the central point of contact of the lines of those sections, and include 520 acres. The Spoon River district includes 2473 acres. It surrounds the lands composing the Zempel district. A public highway and a tract of land 165 feet by 185 feet, owned by the trustees of schools, are within the boundaries of the proposed mutual district. The agreement was not executed by the authorities of those public corporations.

Section 75 of chapter 42 (Smith's Stat. 1925, p. 1021,) reads: "Owners of lands which require combined drainage and protection from overflow, may form drainage and levee districts, by mutual agreement, to include lands, of their own only, by an instrument in writing duly signed and acknowledged and recorded in the drainage record. The mutual agreement may include the location and character of work to be done; the adjustment of damages; the classification; the amount of taxes to be levied; how the work shall be done, or so much of these, or more, as may be agreed upon, and to this extent shall be as valid as though formed in the mode as hereinbefore provided, and may ask the judge of the county court to appoint three commissioners, whose powers and duties thereafter shall be the same as prescribed by other districts, and they shall commence acting at the point reached at the aforesaid agreement: *Provided,* that the said agreement may include the selection of three drainage commissioners from their own number or from others, and their terms of office shall be until the first Monday of September thereafter, or for this term and for one year in addition, as may be agreed at the time of their appointment, and at the annual meeting thereafter the majority of the land owners may choose, by ballot, three commissioners to serve, one for one year,

one for two years and one for three years from the date of appointment, and on the first Monday of each year thereafter the land owners may elect one commissioner of said district who shall hold his office for three years and until his successor is chosen and qualified. The powers and duties of the commissioners of a district by mutual agreement, and the mode and effect of special assessments, shall be the same as provided for other districts organized under this act, and all the powers, rights and benefits of every kind given to drainage districts organized by petition to the county court shall be had by drainage districts organized by mutual agreement, and districts organized by mutual agreement may do as fully all work mutually agreed upon, as though surveys, plats and profiles, etc., were made and filed in said matter, and contracts for work to be done in said district may be let in parts, or the whole of said work may be let in one contract as is provided in this act, as seems to be for the best interest of the parties concerned."

Appellants contend that the agreement establishing the Zempel district is insufficient because (1) it contains no description of the location or character of the work to be done; (2) it is not signed by all of the owners of land in the territory purporting to be organized into a district; (3) the statute authorizing such organization by mutual agreement is unconstitutional; (4) the statute authorizing the agreement is so indefinite and uncertain in its terms and so lacking in its provisions that it cannot be executed and is therefore void.

Appellees concede that appellants may collaterally attack the jurisdiction of the county court approving the organization of the Zempel district. That court found that it was legally organized, and that it is, therefore, a defense against the organization of the Spoon River district. The claimed defect is that the agreement by which the Zempel district was organized contains no statement as to the location, size or length of any levee and ditch or as to whether the ditches

are to be open ditches or tile drains, and contains no statement as to the character of the pumping plant. Appellants' contention further is, that a district cannot be legally organized under section 75 of the Drainage act unless the agreement contains a description of the location and character of the work.

Section 75 provides that a mutual agreement may include the location and character of the work to be done, "or so much of these, or more, as may be agreed upon, and to this extent shall be as valid as though formed in the mode as hereinbefore provided." The interpretation contended for rests upon the word "may," as used in the section. The word "may" is generally a sign of permission or power. The section under consideration authorizes a departure from the preceding sections in the establishment of general drainage districts. In the establishment of other districts the public is directly interested, and every fact necessary to their establishment must appear on the record. Nothing can be supplied by intendment or agreement. By the preceding sections authorizing their establishment, the conditions precedent and the essential things to be done are mandatory. The terms of the section granting authority to establish drainage districts by agreement are that the owners may form districts. The agreement may include the location and character of work to be done, the adjustment of damages, the classification, the amount of taxes to be levied, how the work shall be done, *"or so much of these, or more,* as may be agreed upon, and to this extent *shall* be as valid as though formed in the mode as hereinbefore provided, and may ask the judge of the county court to appoint three commissioners, whose powers and duties thereafter shall be the same as prescribed for other districts, and they shall commence acting at the point reached at the aforesaid agreement." To and including the time the judge of the county court is requested to appoint commissioners, if he is asked to appoint them, every step is per-

missive. The powers and duties of the commissioners, when appointed, are not permissive. Their powers and duties by the express requirement of the statute "shall be the same as prescribed for other districts, and they shall commence acting at the point reached at the aforesaid agreement." The point referred to is the entire scheme, whatever it may be, that has been agreed upon as to the constitution and structure of the district. The owners have nothing to do with the execution of the work for which it is created. The commissioners appointed by the county judge or selected by the owners supersede the owners in authority thenceforth in the matter of corporate functions.

The portion of the section heretofore considered confers power—not duty—upon the owners of lands in creating a voluntary drainage district. The power relates to a matter mutually concerning their own property. What they did in filing a petition for a voluntary district for the protection of their own lands directly concerned no one else. The rule is, that the word "may" means "must" or "shall" only in cases where the public interest and rights are concerned and where the public or third persons have a claim *de jure* that the power should be exercised or where it is necessary to so construe it to carry out the intention of the legislature. (*Schuyler County* v. *Mercer County,* 4 Gilm. 20; *Chicago and Alton Railroad Co.* v. *Howard,* 38 Ill. 414; *Kane* v. *Footh,* 70 id. 587; *Fowler* v. *Pirkins,* 77 id. 271; *People* v. *Board of Supervisors,* 308 id. 543.) The legislature conferred power to organize drainage and levee districts by mutual consent of property owners, at their election, and the owners properly exercised their power by the agreement signed by them.

Appellants insist that no district can be organized without plans and specifications for the work to be done. That is true, except as to those districts organized by mutual agreement. When it is said that no district can be organized without plans and specifications the language of the section

is overlooked or its meaning misapprehended. Specifying what the mutual agreement may include, the section expressly provides that if the agreement shall contain so much of the items mentioned, "or more, as may be agreed upon," the district so organized shall to that extent be as valid as though formed in the mode thereinbefore provided,—that is, as provided by the general law regulating the organization of drainage districts affecting a larger part of the public. An absurdity will not be imputed to the law-making body. It authorized those creating a district by voluntary action for the protection of their own land, to agree upon so much of the things specified as they shall deem proper for the purpose, though omitting some and including more than those specified. The creation of drainage districts is a purely statutory proceeding, and the statute is the only criterion of rights, duties and obligations with respect thereto.

Appellants inquire by what method or in what manner the plans and specifications for work to be done in the district may become part of the plans and specifications of the district where there is no description of the location and character of the work to be done. It is not to be assumed that the plans and specifications for proper and necessary work will not be prepared. It is not material to inquire now as to those matters. The statute does not require them in this case as a prerequisite to organization. Being a district by agreement of the land owners, with officers, agents and engineers, those interested in the district may certainly know the plans and specifications for the work. They might have included plans and specifications for reparation and protection in their agreement, but not having done so, the statute says the commissioners shall begin where the agreement of the owners stopped. They and the engineer are charged by the statute with the duty of rendering the organized district effectual for the purpose for which it was created. That seems to be the obvious meaning of the section. In advance it will not be assumed that those charged

with the execution of the work of·the district will be derelict and prove unfaithful to the duties imposed upon them or voluntarily assumed. While the power—the right—to organize a mutual district is authorized by law, the correlative duty to discharge the functions among themselves is imposed by law, and non-user might be a violation of the duty. The agreement in this case includes the general plan for the work to be done. That is all the statute requires. The original plans for a district organized under the statute may be changed by the commissioners. The statute authorizes the changes. In districts created by mutual agreement they shall have all the rights, powers and privileges as other districts to accomplish the purpose of their organization. Both districts are controlled by sections 12 and 44a of the Drainage act.

It is contended that section 75 is void because in conflict with section 22 of article 4 of the constitution. Section 22 is an inhibition against the passage of local or special laws with regard to certain enumerated matters embraced in twenty-three clauses. The twenty-third clause, with its context, reads: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." The clause quoted is a limitation upon the legislature in the passage of private or special acts, which under previous constitutions filled volumes conferring special privilege. It has no application to this case. But section 31 of article 4 as an amendment to the constitution, ratified in 1878, reads: "The General Assembly may pass laws permitting the owners of land to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest the corporate authorities thereof, with power to construct and maintain levees, drains and ditches, and to keep in re-

pair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."

The limitation upon the powers and duties of the General Assembly is not fixed by the constitution but is left to discretionary regulation by the legislature. In *Rylands* v. *Clark,* 278 Ill. 39, (a case involving the construction of an amendment to the Chicago Sanitary District act,) it was said: "While the law is local and special in that it provides for the construction of bridges at certain places designated therein, it is not rendered invalid for that reason, alone. We have frequently held that drainage districts and sanitary districts are not within the inhibition of the section of the constitution referred to." (*Owners of Lands* v. *People,* 113 Ill. 296; *Wilson* v. *Board of Trustees,* 133 id. 443; *People* v. *Bowman,* 247 id. 276; *Herschbach* v. *Kaskaskia Island Sanitary District,* 265 id. 388.) That act possessed more of the characteristics of special legislation than the act now under consideration. But section 75 does not fall within the category of local or special laws. It applies to no particular place and was not enacted for a particular or special occasion. It is general in its terms. It is applicable whenever parties desire to protect their "own lands, only," from overflow by drainage and levees. The terms of the act apply to any place and to all persons where the conditions exist rendering it applicable. Whether politic or not is a question which the legislature by enacting it determined in its favor, and it is immune from attack on that ground or on the ground that it may not be efficient for the purpose for which it was enacted.

It is contended that the Zempel district was organized for the fraudulent purpose of preventing the larger district from being organized, since the larger district could not, under the law, include another district. It is further contended that the attack on the legality of the Zempel district may be made collaterally. The agreement and petition for

the Zempel district were filed September 27, 1926, and the order of the county court approving the organization of the district was entered September 28, 1926. The petition for the organization of the Spoon River district was filed December 23, 1926. The Zempels and others were in favor of the organization of the smaller district and wished to avoid being included in the larger district. Several attempts had been made to organize a district in the larger territory. There was dissension that prevented progress in the organization. Drainage and protection against water were needed. Whether anyone connected with this controversy is chargeable with the dissension is immaterial. Those interested in the local protection of their property had the legal right to organize a district for the purpose if the statute authorized it. No one is chargeable with fraud in the exercise of rights conferred by law.

Appellants contend that the organization of the Zempel district may in this proceeding be attacked for fraud. The proceeding, on the record before us, was one before the county court to approve the organization of the Spoon River Drainage and Levee District. The approval was resisted on the ground that the territory composing it included the Zempel district, then, colorably at least, a corporation. A district cannot be legally organized if the territory composing it includes another district. (*People* v. *Lease,* 248 Ill. 187; *People* v. *Crews,* 245 id. 318; *People* v. *McDonald,* 264 id. 514.) The reason is, that two municipalities can not exercise jurisdiction over the same territory for the same purpose at the same time. On that ground, as the record shows, the petition for the organization of the Spoon River district was dismissed. Whether the Zempel district is a legally organized district cannot be drawn in question in the manner now sought to question it. In support of the contention that it may be attacked collaterally, appellants cite *Beck* v. *Lash,* 303 Ill. 549, *Burton* v. *Perry,* 146 id. 71,

*Evans* v. *Woodsworth,* 213 id. 404, *Caswell* v. *Caswell,* 120 id. 377, and *People* v. *McDonald, supra.* The first case cited was a direct attack upon an order of the county court admitting a will to probate. The second was a collateral attack upon a former decree on the ground of fraud. In the *Beck case* it was said that there are two kinds of fraud as applied to this subject—fraud in obtaining a decree by false witness and fraud which gives a court colorable jurisdiction over the defendant's person. In case of fraud of the former kind a decree cannot be impeached in a separate and independent proceeding, though it is otherwise in the case of fraud of the latter kind. The third was a direct attack by bill to impeach a decree for fraud in making a false affidavit the basis for publication in obtaining jurisdiction to enter the decree. The fourth, cited in the *Burton case, supra,* was an attack by bill of review—a method of direct attack—to annul a decree for divorce on the ground of fraud in obtaining it. The fraud in those cases went to the acquiring of jurisdiction. The last case was *quo warranto,* challenging the organization of a drainage district. Questions presented by the record in that case and discussed by Mr. Justice Carter show the limitations upon collateral attack and the necessity for direct attack in the organization of drainage districts. *Quo warranto* is a method of direct attack. The question of jurisdiction in the cases cited discloses their inapplicability to the question presented in the case at bar.

Section 75 authorizes an agreement to form a drainage district to include three drainage commissioners from among the land owners or from others for the term therein specified. By the agreement three commissioners were appointed to serve until their successors are appointed according to law. It was agreed that a more specific description and decision as to work to be done in the district, the apportionment of damages, the classification of lands and the amount of assessments or taxes to be levied shall be

left to the discretion and judgment of the commissioners. The only matter that may be made the subject of agreement is the organization of the district, with a description of the territory included in it, and such plans as the parties may agree upon, as specified in the section, and the appointment of commissioners, or they may ask the judge of the county court to appoint them. They named them in their agreement. At that point convention ceased. In all things from that period the general law applicable to the operation of the district has been in force as completely as provided for other districts under the act. The agreement and petition were presented to the county court, and thereupon it entered an order approving and confirming the agreement and declaring the district to be a body politic and corporate, with all the powers of such bodies.

It is objected that the county court had no jurisdiction and that its order is a nullity. The statute does not require the order. The county court had no authority to make an order declaring the agreed district to be a body politic and corporate. The agreement created the corporation. The section authorizing the incorporation by agreement marks a distinct line between the beginning of corporate life and the beginning of corporate functions. The nearest approach to the beginning of corporate functions that may be attained by agreement is the appointment of three commissioners, "and they shall commence acting at the point reached at the aforesaid agreement." Thenceforth all corporate functions must be performed by them. They are the corporation. As commissioners they are controlled by law as if elected. The objection of appellants that the county court was acting without jurisdiction is well taken. The order it entered purporting to create the corporation is a nullity. It is harmless and in no way or to any extent adds to or detracts from the legal effect of the agreement creating the district. The portion of the order striking certain territory from the district is complained of, but it is

void for lack of power to make it. The creation of drainage and levee districts is defined by law. Unless, in the process of applying the law to their creation, provision is made for action by courts they are without authority. If they are required to act, it is the statute, and not the judgment of the court, which creates the corporation, and its powers are derived from the legislature and not from the court. (*Blake* v. *People*, 109 Ill. 504; *Huston* v. *Clark*, 112 id. 344; *People* v. *Lease, supra.*) It is no less true in this case that the statute, and not the agreement, created the district. The territory stricken from the district by order of the court is part of it notwithstanding the order.

A careful consideration of the section authorizing the organization of the Zempel district fails to reveal any incongruity in the method prescribed for procuring needed protection by appellees of their own lands subject to overflow. Their lands, and the lands sought to be incorporated in the larger district, are so subject. The repeated failure to secure protection by the organization of a general district protecting all property needing protection, including their own lands, was ample justification for their seeking relief under a statute that meets the purpose. The evidence in the record does not show that the purpose of the district is fraudulent, as contended. No motive for the prevention of the organization of the larger district is shown by the evidence. If that result follows from the assertion by appellees of their legal rights it cannot be made a legitimate ground for attack against them. Whether the Zempel district was legally organized is not subject to inquiry in this collateral proceeding.

The order of the county court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Order affirmed.*