STATE ex rel SOUTH DAKOTA GAME AND FISH COMMISSION, et al, v. O'NEILL, State Auditor, et al.

(254 N. W. 265.)

(File No. 7679. Opinion filed April 10, 1934.)

*Robert D. Jones,* of Milbank, for Plaintiffs.

*Walter Conway,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, for Defendants.

POLLEY, J. This is an original action instituted by the state game and fish commission to restrain the defendants, Custer State Park Board, the state auditor, and state treasurer, from expending and paying out of the state game fund money in excess of $12,000 to be expended in Custer State Park for the fiscal year ending June 30, 1934.

At and for some time prior to the adoption of the Revised Code of 1919, the state game and fish commission consisted of the Governor, Attorney General, and state game warden (sections 10431-10445). This board as so constituted continued to exist until the adoption of the so-called Civil Administrative Code, chapter 115, Laws 1925 (subchapter 3, art. 1, of said act). By the provisions of this act the said game and fish commission was abolished and the jurisdiction theretofore exercised by said commission was transferred to the division of game and fish of the department of agriculture (subchapter 3, art. 6) created by that act. By section 8 of subchapter 4 of said statute it was provided that all fees, licenses, etc., should be paid into the state treasury subject to appropriation by the Legislature with the condition, however, that all fees and moneys collected and received by that division for the biennium, July 1, 1925, to June 30, 1927, were appropriated for the use of said division of game and fish to be expended by such division subject to audits as other expenditures of departments and divisions were audited under the provisions of said act.

By the provisions of chapter 14, Special Session of 1927, what is known as the non-political game and fish commission was created. This commission was to consist of six members:

" * * * Not more than three of whom shall be members of the same political party at the time of their appointment, and not more than two of whom shall reside, at the time of their appointment, in the same congressional district, as now established and bounded." Section 1.

The members of this commission were to be appointed by the Governor and were to qualify by the filing of an official oath and bond as provided for other state officers. By the provisions of section 4 of this act, said commission is required to maintain an office at the Capitol and was to "take over and receive the possession, custody and control of all supplies, equipment, funds, and property then had, used or in the custody of the Department of Agriculture, held for the benefit or use of the Division of Game and Fish."

Said act by sections 5, 6, 7, 8, 9, and 10 confers certain powers and imposes numerous duties upon the commission. Section 11 of said act provides for the disbursement of all funds that come into the possession or control of the commission as follows:

"Section 11. *Funds, Appropriation.* All moneys collected under any of the game or fish laws of this state, including sums paid for licenses or on account of bonds or contracts entered into with any persons, and money due from other sources connected with the game and fish laws of this state, except fines, shall be paid into the state treasury to be credited to the State Game and Fish Fund, which fund together with all sums which may be in said fund on June 30th, 1927, shall be used, and so much thereof as shall be necessary is hereby annually appropriated, until expended, directly and only for the purpose of enforcing the game laws of this state and for the propagation and preservation of game and fish. Provided, that 25 per cent of all such funds may be used for like purposes within the Custer State Park and be paid out upon vouchers approved by the State Park Board. Provided further, that not over Twenty-five Thousand Dollars ($25,000) shall be apportioned to the Custer State Park Board in any fiscal year. Provided further that such funds shall be apportioned monthly, in proportion with receipts of the Department of Game and Fish."

No appropriation from the general fund of the state has ever been made to the game and fish commission, of funds with which to carry out its numerous duties and activities. It is dependent wholly upon revenue raised by itself, principally from the sale of hunting and fishing licenses, and the receipts from these sources, of course, vary according to the number of licenses sold. In 1930 the receipts of the commission from all sources amounted to $253,606.53, while in 1933 the total receipts amounted to only $141,697.24, a decrease of almost 50 per cent. By the 9th day of January, 1934, the state game and fish fund in the hands of the state treasurer had been reduced to the sum of $20,493.08, and by the 3d day of March, 1934, said fund had been reduced to such an extent that there was but $4,473.36 on hand.

In view of the depleted condition of this fund, the game and fish commission on the 9th day of January, 1934, adopted the following resolution:

"Whereas, the sharply reduced income of the Game and Fish Department of the State of South Dakota has necessitated a severe curtailment of the normal activities of this Department, and

"Whereas, under normal financial conditions the $25,000.00 which has been allocated annually to the Custer State Park Board represented only about 10% of the total income of the Department, and

"Whereas, under present financial conditions this $25,000.00 represents fully 20% of the revenue of the Game and Fish Department, and

"Whereas, the continued dry weather in South Dakota has placed many additional demands on the Game and Fish Department for supervision and construction of water conservation projects, and

"Whereas, according to section 11, chapter 14, Special Session Laws of 1927, it is discretionary with the Game and Fish Commission to determine the amount of money to be allocated to and spent by the Custer State Park Board,

"Now, therefore, be it resolved, that no more money from the funds of the Game and Fish Department be allocated to or spent by the Custer State Park Board during the balance of the current fiscal year ending June 30, 1934."

A copy of this resolution was served on the defendants on January 9, 1934. On the 5th day of February, 1934, the commission took further official action whereby it limited the amount of said game and fish fund that might be expended by the Custer State Park Board within the Custer State Park during the fiscal year ending June 30, 1934, to the sum of $12,000, and gave the defendants notice thereof on the 6th day of February, 1934. The park board disregarded such action on the part of the game and fish commission, and threatened to continue to use money from the game and fish fund to the extent of $25,000 for the fiscal year ending June 30, 1934.

Prior to 1919 the state game preserve in Custer county was apparently partly under the supervision of the game and fish commission, and the game warden, and the commissioner of school and public lands.

By chapter 165, Laws 1919, the Custer State Park Board, to be hereinafter referred to as the "park board," was created. The former state game preserve was designated as Custer State Park, and the board was authorized to purchase the park and other lands with full authority to manage and control the park and to expend all funds "for the care, maintenance, preservation and improvement thereof." Section 3. A fund of $200,000 was appropriated (section 5, c. 165, Laws 1919) to be disbursed on vouchers approved by the park board. By chapter 188, Laws 1921, the park was enlarged, and hunting or trapping therein was forbidden except under regulations prescribed from time to time by the park board, "provided * * * that the Game and Fish Commission may continue to have the same control over the game animals of the Park as heretofore provided by law." Section 5. By the provisions of chapter 189, Laws 1921, the park board was given additional powers. The park was again enlarged and the powers of the park board affirmed by chapter 135, Laws 1925. In addition to appropriations for purchase of additional tracts of land, etc., the general appropriation bill has continuously carried an item for maintenance of the park running from $12,500 to $15,000. In 1933 the appropriation amounted to $13,800.

By chapter 12, Laws of Special Session of 1927, the park board was recreated to consist of three members, each to be ap-

pointed by the Governor of the state. This board appears to have been given complete and exclusive jurisdiction over the park and all the public property and privileges therein, including the right of eminent domain, the right to regulate the speed of vehicles on the public highways in the park, and the maintenance of public schools within the boundaries of the park.

Notwithstanding the depleted condition of the game and fish fund in the hands of the state treasurer, and the repeated attempts made by the game and fish commission to limit the amount thereof to be used by the park board, the park board continued to use such fund until prevented therefrom by the order of this court issued on the 3d day of March, 1934.

Defendants base their right to use the said fund to the extent of $25,000 for each fiscal year upon the language of the first proviso of section 11, of chapter 14, Laws of the Special Session of 1927. This proviso reads as follows:

"Provided, that 25 per cent of all such funds may be used for like purposes within the Custer State Park and be paid out upon vouchers approved by the State Park Board."

It is the contention of the park board that this proviso confers upon such board the absolute right to use 25 per cent of the annual income of the game and fish commission to the extent of $25,000, without the apportionment thereof by the game and fish commission, and regardless of whether the said fund is sufficient to maintain the game and fish commission and carry on its legal and proper activities; and regardless of whether said money has been transferred to the park fund by the game and fish commission. On the other hand, the game and fish commission contend that by the use of the said proviso the Legislature intended merely to authorize the commission to apportion said fund to the park board if it saw fit to do so; and that the park board has no right to the use of any part of such fund until the same has been apportioned to said board by the game and fish commission, and that since the law does not expressly require the commission to make such transfer, said commission may exercise its discretion as to whether such transfer shall be made. A decision of this question depends upon the meaning of the word "may" where the same is used in the first proviso of said section 11.

██ Whether the word "may" in this case is to be regarded as mandatory, or permissive only, depends upon the intent of the Legislature. This question has already been considered by this court. In Rowenhorst v. Johnson, 48 S. D. 325, 204 N. W. 173, we said:

"It is the general rule, and one which has been recognized by this court, that the word 'may' when used in a statute is permissive only."

This ruling is followed in Henry v. Meade County Bank, 34 S. D. 369, 148 N. W. 626. See, also, Northwestern Loan & Banking Co. v. Jonasen, 12 S. D. 618, 82 N. W. 94. In Foutch et al v. Zempel et al, 332 Ill. 192, 163 N. E. 546, 549, the rule is stated as follows:

"That the word 'may' means 'must' or 'shall' only in cases where the public interests and rights are concerned and where the public or third persons have a claim de jure that the power should be exercised, or where it is necessary to so construe it to carry out the intention of the Legislature."

This is so generally accepted as the correct rule that further citation of authority is not necessary. In this case we do not believe that the Legislature used the work "may" in its mandatory sense, but intended that the game and fish commission should exercise its discretion in transferring a part of its fund to the park fund. No reason is shown or suggested why the needs or requirements of the park board should be given preference over the requirements of the game and fish commission.

It will be noted that by the provisions of section 4, chapter 14, of the Special Session of 1927, the game and fish commission is required to take over from the department of agriculture and receive the "* * * possession, custody and control of all supplies, equipment, funds, and property then had, used or in the custody of the Department of Agriculture, held for the benefit or use of the Division of Game and Fish.

And by the provisions of section 11 of said act:

"All moneys collected under any of the game or fish laws of this state, including sums paid for licenses or on account of bonds or contracts entered into with any persons, and money due from other sources connected with the game and fish laws of this state, except fines, shall be paid into the state treasury to be credited

to the State Game and Fish Fund, which fund together with all sums which may be in said fund on June 30th, 1927, shall be used, and so much thereof as shall be necessary is hereby annually appropriated, until expended, directly and only for the purpose of enforcing the game laws of this state and for the propagation and preservation of game and fish."

The second proviso of said section 11 provides "that not over Twenty-five Thousand Dollars ($25,000) shall be apportioned to the Custer State Park in any fiscal year."

This proviso does not imply that such funds have been or are apportioned by the Legislature, but that they "shall be apportioned," implying a future act and so long as these funds are in the possession, and under the control of the game and fish commission, they can be apportioned by no other person, board or commission, unless clearly authorized to do so by the Legislature. Again, the third proviso of said section 11 provides "that such funds shall be opportioned monthly, in proportion with receipts of the department of game and fish." This proviso implies also that the apportionment is to be made in the future and must be in proportion to the receipts of the department of game and fish.

Counsel for defendants call our attentin to an opinion rendered by the Attorney General's office in the month of October, 1927, wherein the Attorney General expresses the opinion that the state auditor may issue warrants against the game and fish fund upon vouchers approved by the park board, and that the treasurer may pay the same to the extent of 25 per cent thereof, but not exceeding $25,000 for any one year, without the apportionment by or consent of the game and fish commission. With all due regard for the opinions of the Attorney General, we are not able, for the reasons above set out, to agree with such opinion in this case.

Defendants stress the fact that since the year 1927, the state treasurer has acted upon the above opinion of the Attorney General and made monthly apportionments of 25 per cent of the game and fish fund to the state park fund, as the same came into said game and fish fund; that said apportionment has been acquiesced in by the game and fish commission since said year 1927; and that having been regarded as the law for so long a period of time, the commission should not be allowed to question the correct-

ness of the practice at this time. This argument is persuasive, of course, but it is not conclusive on the court, and when we think the practice is contrary to the law it is our duty to say so. No property rights have been vested by or are dependent upon the above practice, therefore no injury can be occasioned by correcting said practice at this time. Defendants further stress the fact that they have already incurred obligations sufficient in amount to absorb the entire $25,000 payable from the game and fish fund, but the game and fish commission is not responsible for this condition. Defendants have at all times known the condition of this fund and have had actual knowledge since the 9th day of January, 1934, that the plaintiffs intended to resist the claimed right of defendants to make further disbursements from the game and fish fund.

We are of the opinion that the word "may," where used in the first provision of section 11, ch. 14, Laws Special Session of 1927, is permissive only and leaves the transfer of the fund involved to the discretion of the game and fish commission.

The writ will issue as prayed for in the complaint.

WARREN and RUDOLPH, JJ., concur.

CAMPBELL, J., concurring specially.

ROBERTS, P. J., disqualified and not sitting.

CAMPBELL, J. (concurring specially). It was undoubtedly the general intent of the Legislature that the disbursement of the state game and fish fund should be under the control of the non-political game and fish commission created by chapter 14, Laws Special Session 1927, and that the fund should be expended "directly and only for the purpose of enforcing the game laws of this state and for the propagation and preservation of game and fish." The specific language requiring construction in the present proceeding is that portion of section 11 of the above-mentioned statute reading as follows:

"Provided, that 25 per cent of all such funds *may* be used for like purposes within the Custer State Park and be paid out upon vouchers approved by the State Park Board. Provided further, that not over Twenty-five Thousand Dollars ($25,000) shall be apportioned to the Custer State Park Board in any fiscal year. Provided further that such funds shall be apportioned monthly, in proportion with receipts of the Department of Game and Fish."

All parties to this proceeding appear to agree that the word "may" as here used is permissive rather than mandatory. The real controversy seems to be on the question of whether the permission granted by this particular "may" is granted to the state game and fish commission or to the Custer State Park Board. Construing the language above quoted in connection with the entire statute and related statutes and in the light of relevant legislative history, I think the permission is granted to the game and fish commission. In other words, the game and fish commission may, in its discretion, delegate to the state park board the expenditure (strictly for game and fish purposes within the state park) of a portion of the state game and fish fund. This discretion of the game and fish commission is limited by the proviso that it cannot apportion for this use in any one year more than 25 per cent of the total fund or more than $25,000, whichever maximum may first be reached. I believe that the entire matter of such apportionment (under the statutory maxima) is discretionary with the commission and I do not think its exercise of such discretion is subject to judicial review. Assuming that it might be deemed so subject, I am satisfied that no abuse thereof appears in the record here.

So far as concerns the previous practice which is said to have developed pursuant to an Attorney General's opinion of October 14, 1927 (Report Attorney General 1928, p. 178), which opinion defendants plead in their return and upon which they have much relied in the argument, that seems to me a matter of little importance. From 1928 to and including 1931 the $25,000 maximum fixed by the statute amounted to approximately 10 per cent of the state game and fish fund. The receipts of the fund were sufficient so that $25,000 thereof could be expended for fish and game purposes in the state park under supervision of the park board and still leave the remainder of the fund adequate to finance other necessary activities of the game and fish commission. The commission may have been, and undoubtedly was, at that time, quite willing to exercise its discretion by apportioning $25,000 annually for game purposes in the park. Under those circumstances, it would have been entirely pointless (even if possible) to enter into a academic controversy with the Attorney General's office as to whether the commission could restrict such apportionment to a lesser amount if and when it desired to do so. The appropriate time to raise that

question was when it became actual rather than theoretical, and that moment arrived when the marked decrease in the receipts of the game and fish fund beginning in 1932 and increasing in 1933 caused the commission to believe that it was no longer wise or proper to apportion $25,000 thereof to the state park, and to entertain the opinion that game and fish activities in the state park should share with other proper, legitimate, and operating activities of the game and fish commission in the deprivations necessarily imposed by decreased receipts.

Upon these considerations I concur in the view that the writ should issue.