## TUBBS et al., Appellants v. LINN, Respondent

(70 N. W.2d 372)

(File No. 9463. Opinion filed May 19, 1955)

**Charles R. Hayes,** Deadwood, for Plaintiffs and Appellants.

**Ralph A. Dunham,** Atty. Gen., and **Phil W. Saunders,** Asst. Atty. Gen., for Defendant and Respondent.

SMITH, J. The plaintiff applied to the trial court for a writ of mandamus commanding the Commissioner of School and Public Lands to issue permits to them to prospect for minerals on described school lands of the state. On the ground that the facts stated in the application were insufficient to justify the relief for which the plaintiffs prayed,

the trail court granted the motion of the commissioner for a judgment of dismissal. The appeal of the plaintiffs is from the judgment of dismissal.

In broad outline, the application reveals these facts. In May and April 1952 the plaintiffs applied under SDC 15.05 to the commissioner for permits to prospect for minerals on nine described sections of school land in Fall River County. On or about August 1, 1952, the commissioner informed one of the plaintiffs that the requested permits would be granted. Thereafter the commisisoner advised plaintiffs he thought permits to prospect for minerals should be upon bids as in the case of oil and gas lands and he expected to seek such a change in the controlling statutes. The commissioner did not issue the permits. In August 1953 the commissioner informed plaintiffs they had acquired no rights by virtue of their applications and he would issue prospecting permits under Chapter 43, Session Laws of 1953. The applications further state "That deponent is advised and believes and therefore states the facts to be that the delay and subsequent refusal of said commissioner to issue prospecting permits to deponent and said C. A. Tubbs were arbitrary, were an abuse of discretion, if any discretion he had in the premises, were in disregard of his word that permits would be issued to deponent and said C. A. Tubbs upon their applications therefor and were in violation of his duty and of the rights of deponent and said C. A. Tubbs under the law applicable and in force when they sought said permits, and for many months thereafter."

The controlling provisions of statute in effect when the applications for prospecting permits were made read, with emphasis supplied in part as follows:

"All coal, ores, asphaltum, metals, minerals, and other metallic or mineral products in or upon lands belonging to the state or in lands which subsequent to July 1, 1919, were or may hereafter be sold, granted, conveyed, or leased for agricultural, meadow, pasturage, or other purposes, or in any way transferred by the state, shall be subject to license or contract by the state, except as hereinafter provided. * * *

"All coal, ores, asphaltum, metals, minerals, and other metallic and mineral products in such land may be removed by the state or may be disposed of by the Commissioner under such rules and regulations as the Board of School and Public Lands may establish to properly carry into effect the provisions of this section and succeeding sections, and not inconsistent herewith.

"The provisions of this section shall not apply to oil and gas, and shall not apply to lands sold prior to the reservation of such coal, ores, * * *." SDC 15.0501.

"The Commisisoner **may** execute and deliver a permit granting the right to prospect for coal, ores, asphaltum, metals, and minerals on any state land described therein for the period of one year from the date thereof, and the consideration for such permit shall be determined by the Board of School and Public Lands, but no coal, ores, asphaltum, metals and minerals shall be removed from the land described in such permit until a license has been secured.

"At any time prior to the expiration of any such prospecting permit the original holder, or any assignee thereof, shall have the right to receive from the Commissioner a license as hereinafter provided for, which shall bind the state and the person to whom it shall issue to the mutual observance of the obligations and conditions thereof. No license or permit shall be assignable or transferable except on the written consent of the Commissioner." SDC 15.0503.

Other provisions for the protection of agricultural lessees of the same property, and dealing with the terms of a license to remove minerals are contained in SDC 15.0504, 15.0505 and 15.0506.

Ch. 43, Laws 1953 amended SDC 15.0503, supra. The changes need not be described. It is sufficient for our purposes to state that the applications for prospecting permits

filed by plaintiffs in 1952 do not comply with the requirements of that section as amended.

The fundamental contention of the plaintiffs, advanced under alternative theories, is that through their described applications and the pleaded circumstances, such an interest had vested in them or such an obligation to them had arisen, as the legislature, for constitutional reasons, could not destroy or impair by subsequent legislation such as Ch. 43, Laws 1953, and hence that the commissioner was under a duty to issue the permits sought in their applications. We reproduce lucid discussions of the principles under which the foregoing fundamental contention is made.

In Lytle v. State of Arkansas, 9 How. 314, 50 U.S. 314, 13 L.Ed. 153, it was written:

"It is a well-established principle, that where an individual in the prosecution of a right does every thing which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him. In this case, the preemptive right of Cloyes having been proved, and an offer to pay the money for the land claimed by him, under the act of 1830, nothing more could be done by him, and nothing more could be required of him under that act. And subsequently, when he paid the money to the receiver, under subsequent acts, the surveys being returned, he could do nothing more than offer to enter the fractions, which the register would not permit him to do. This claim of preemption stands before us in a light not less favorable than it woud have stood if Cloyes or his representatives had been permitted by the land officers to do what, in this respect, was offered to be done."

In The Yosemite Valley Case (Hutchings v. Low), 15 Wall. 77, 82 U.S. 77, 21 L.Ed. 82, in writing of the principle exemplified in the foregoing Lytle case, Mr. Justice Field observed: "There is no question about the correctness of the doctrine here announced; it is only a familiar principle which is stated, that where one offers to do everything upon which

the acquisition of a right depends, and is prevented by fault of the other side, his right shall not be lost by his failure." But he further wrote, "The principle only applies where, by law or contract, the acquisition of a right is made dependent upon the performance of certain specified acts."

In State v. Robinson, 119 Tex. 302, 30 S.W.2d 292, 297, this appears: " 'When there is an offer made by an act of the legislature which is accepted by an individual, there is a contract which is not within the power of the state to impair. After an acceptance, a repeal of the law cannot affect the contract; but, until an acceptance, a repeal of the act withdraws the offer, and no contract can be made.' "

It will be observed that these authorities deal with the failure or refusal of a public officer to perform a ministerial duty. The acquisition of a right by the petitioner did not depend upon the exercise of a legal discretion by that officer.

The first alternate theory advanced by plaintiffs in urging that the foregoing principle is invoked by the admitted facts is that the statute does not clothe the commissioner with a discretion, and therefore upon receiving plaintiffs' applications and fees the duty to issue permits arose, and the rights of the plaintiffs vested.

This assertion of plaintiffs that the commissioner was without discretion in the premises rests upon a reading of the word "may" we have emphasized in SDC 15.0503, supra, to mean "shall". In presenting this view counsel recognizes that the word "may" when used in a statute is always construed in a permissive sense unless the context and subject matter indicates a different legislative intention. Rowenhorst v. Johnson, 48 S.D. 325, 204 N.W. 173, and State ex rel. South Dakota Game and Fish Comm. v. O'Neill, 62 S.D. 522, 254 N.W. 265; 57 C.J.S., May, p. 456. He grounds his argument upon a rule of construction formulated by Mr. Justice Swayne in Rock Island County Supervisors v. United States, 4 Wall. 435, 71 U.S. 435, 18 L.Ed. 419, and quoted with approval by this court in Swenehart v. Strathman, 12 S.D. 313, 81 N.W. 505. In dealing with the words "may, if deemed advisable" it was there written:

"The conclusion to be deduced from the authorities is, that where power is given to public officers,
in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language
used, though permissive in form, is in fact peremptory. What they are empowered to do for a
third person the law requires shall be done. The
power is given, not for their benefit, but for his.
It is placed with the depositary to meet the demands
of right, and to prevent a failure of justice. It is
given as a remedy to those entitled to invoke its aid,
and who would otherwise be remediless."

Another statement of this rule of construction was quoted by this court from Foutch v. Zempel, 332 Ill. 192, 163 N.
E. 546, 549, in State ex rel. South Dakota Game and Fish
Comm. v. O'Neill, supra, as follows: [62 S.D. 522, 254 N.W.
267]:

" 'That the word "may" means "must" or
"shall" only in cases where the public interest and
rights are concerned and where the public or third
persons have a claim de jure that the power should
be exercised, or where it is necessary to so construe
it to carry out the intention of the Legislature.' "

The theory thus advanced by counsel fails to persuade
us because we are unable to perceive either a right de jure
of a private third party, or a public interest which invokes
the cited settled rule of construction.

The case of State ex rel. Coolsaet v. City of Veblen, 58
S.D. 451, 237 N.W. 555, exemplifies the application of the
quoted rule of construction in aid of rights of third persons.
In that case, in protection of the rights of judgment creditors of our municipal corporations, this court construed authority, permissive in form, to levy a tax to pay a judgment as
peremptory in meaning.

In the case at bar, the plaintiff third parties are without
a right de jure. They seek, through the legislation we are
asked to construe, to acquire a right. To yield to the advocacy of counsel would result in creating a right rather

than in aiding or protecting an existing right. Whether the legislature intended to create such a right in applicants for permits must be gathered from the act as a whole.

The legislation was not motivated by a desire to distribute bounty to prospectors. It reveals a policy to promote the discovery and development of the mineral resources of the state for the benefit of the public through a system of licensing on a royalty basis. The inducement offered private interests to venture capital is an assurance that the holder of a prospecting permit will gain an operating license if he succeeds in discovering minerals. When a permit is issued, because it may ripen into a license, public interests are at stake. Is the applicant in good faith? Is he a prospector or a speculator who hopes to ride to riches on the strength of the prospecting of others? If he is in good faith what of his integrity, capacity, and ability? How large an area should he be permitted to control while he carries on his operations? It is noteworthy that there is no express limitation on the acreage to be covered by a single permit in the statute and these plaintiffs sought permits covering nine sections.

■ With these considerations in mind, the fact that the legislature provided that neither a permit nor a license shall be assignable except with the consent of the commissioner takes on significance. It seems reasonable to conclude that the legislature employed the word "may" we are considering, and the provision requiring consent to assignment to the end that the commissioner might be able to exercise a sound discretion in determining who should hold a permit or a license.

For these reasons we are unable to escape the conclusion that the legislature intended to clothe the commissioner with authority to exercise a sound discretion in the public interest. Cf. United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148. Therefore, it is our holding that the word "may" was employed in a permissive sense in SDC 15.0503, and that a duty to issue the permits did not arise when the applications of plaintiffs were filed.

Under their alternate contention, we understand plaintiffs to say that, even though the commissioner is clothed with a discretion, an interest vested in plaintiffs and the

court should not have dismissed the application for mandamus because (1) the commissioner exercised his discretion by stating he would issue the permits, and (2) he later abused his discretion when he refused to issue the permits because he thought a change should be made in the statutes. We elect to treat these points separately.

In urging that the facts admitted by the motion for dismissal establish plaintiffs' right to a writ because they show that the commissioner exercised his discretion, we do not understand counsel to contend the commissioner should be commanded to perform his promise to issue the permits. His view is that the commissioner had exercised his judgment and announced his conclusion, and therefore that which remained to be done, viz., to issue the formal permits became but a ministerial duty which could be controlled by mandamus.

■ No authority has come to our attention which supports this view. To so hold would open doors to controversy. The statute contemplates a grant of a permit to prospect by instrument in writing. SDC 15.0503. We discover no indication that a secretly formed, or orally expressed, intention to issue a permit was intended by the legislature to exhaust the discretion of the commissioner. The more reasonable view, we think, is that the legislature intended the commissioner to retain full authority to act in the public interest until a formal permit is issued. We therefore hold the contention untenable.

■ The position that the commissioner abused his discretion is well taken. According to the facts, admitted by the motion to dismiss, the commissioner refused to issue any permits to prospect. In other words, because he disagreed with the policy the legislature had written into law, he refused to act. In so doing the commissioner placed himself above the law and abused his discretion in the premises. However, in our opinion, that conclusion is without controlling significance in the exhibited circumstances.

■ Mandamus, which is usually employed to compel performance of duties that are ministerial in character, SDC 37.4501, is also available in instances where judgment and

discretion are involved to compel the legal exercise thereof. In such instances the court is not warranted in directing the manner in which a legal discretion shall be exercised. Midwest Oil Co. v. Youngquist, 69 S.D. 461, 11 N.W.2d 662. In the case at bar, the duty of the commissioner which remained unperformed was that of exercising a legal discretion. The remedy of mandamus was available to plaintiffs to require him to perform that duty. However, by the time these proceedings were instituted, the discretion originally vested in the commissioner had been withdrawn by Ch. 43, Laws 1953, and hence no duty remained for the court to enforce. Cf. 55 C.J.S., Mandamus, § 41, p. 72.

Being of the opinion that the facts pleaded in the application for a writ fail to establish a right to prospectors' permits in plaintiffs, the judgment of the trial court is affirmed.

All the Judges concur.