In the Matter of the Termination of the Franchise Agreement Between GRO-SETH INTERNATIONAL, INC., and International Harvester.

Nos. 15944, 15962.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1989.

Decided June 14, 1989.

Celia Miner of Brady, Reade & Johnson, Yankton, for appellant, Groseth Intern., Inc.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for appellee, Intern. Harvester.

WUEST, Chief Justice.

Groseth International, Inc. (Groseth), a South Dakota corporation, appeals a circuit court order granting the petition of International Harvester (IH) which sought the termination of a franchise agreement between it and Groseth. We affirm the circuit court's decision.

Until 1985, Groseth was a franchised dealer of IH farm equipment located in Yankton, South Dakota. In addition to handling IH's line of farm equipment, Groseth was also a franchised dealer of IH trucks under a separate agreement. This "Dealer Sales/Service Agreement" was entered by the parties on October 21, 1976.

In 1984, Tenneco, Inc. (Tenneco) and its subsidiary, J.I. Case Company (Case), negotiated the purchase of IH's farm equipment division. IH became Navistar International and continued to manufacture and market medium- and heavy-duty trucks. Because Groseth was located in a "conflict area" in which both Case and IH dealerships existed, its farm equipment franchise was terminated. Groseth then brought suit against Tenneco and Case, claiming damages associated with losing the franchise. *See Groseth Intern., Inc. v. Tenneco, Inc.*, 440 N.W.2d 276 (S.D.1989); *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987). The legal issues raised in the previous action are not related to this appeal.

This appeal stems from IH's seeking to terminate its truck franchise agreement with Groseth. IH sought termination of the franchise agreement because Groseth refused to comply with IH's requirements for a computerized communication system referred to as the "Dealer Communication

Network" (DCN). The DCN was designed, in part, to eliminate manual processing of information and to provide more economical and efficient methods of communication between IH and its dealers and between the dealers themselves. Implementation of the DCN partially arose at the request of IH franchisees. As a part of the DCN, each dealer was required to obtain a computer terminal, a display screen and the necessary software. The computer hardware could be purchased through a company designated by IH or through any other private vendor offering equipment which was compatible with the DCN.

On September 19, 1983, IH sent to its dealers, including Groseth, a memorandum which described the requirements for the DCN. All dealers were expected to sign a DCN agreement and be ready to participate in the system within six months of a "roll out meeting." A representative of Groseth attended such a meeting in Sioux Falls, South Dakota on October 10, 1984. Although Groseth initially signed an agreement to become a part of the DCN, it subsequently failed to do so. As a result, IH notified Groseth on May 17, 1985, of its intent to terminate Groseth's franchise. IH cited as its reason for terminating the franchise Groseth's inability to communicate electronically with IH due to Groseth's failing to procure the necessary computer hardware and software. IH contended that Groseth's failure to do so breached certain provisions of the franchise agreement. Groseth had refused to comply with the DCN requirements because of the expense of the system and because of its pending litigation with Tenneco and Case regarding the farm equipment franchise.

IH initially notified Groseth that it would seek termination of the truck franchise if Groseth did not comply with the DCN requirements by October 8, 1985. This deadline was later extended to March 10, 1986. Written application to proceed with the termination of Groseth's truck franchise was made by IH to the South Dakota Department of Commerce and Regulation, Division of Highway Patrol, Office of Dealer Licensing (Department) on January 23, 1986. In its application to the Department, IH requested a hearing to determine whether Groseth's franchise could be terminated under the provisions of SDCL ch. 32–6A.[1] Such a hearing was held on March 11, 1986. A second hearing was held on July 8, 1986, because the recording apparatus used to make the record at the first hearing failed. Representing Groseth at this hearing were Clifford and Carol Groseth. They appeared without the assistance of legal counsel.

At the time of the second hearing, 727 of IH's 734 dealers had complied with the DCN requirements. Of the seven dealers who had not complied, three were new dealers who were taking steps toward meeting the requirements and three were dealers who were involved in bankruptcy proceedings. The seventh dealer, of course, was Groseth. The record further shows that the only function of which the DCN was capable at the time of the hearing was parts ordering. This task also could have been accomplished by telephonic or written orders. The other services for which the DCN was designed, such as truck ordering, warranty submissions, customer complaints and general communication between IH and the dealers as well as among the dealers themselves, were still in the developmental stages. This developmental process was expected to take an additional fifteen months.

The Department determined that Groseth had not breached the Dealer Sales/Service Agreement. Consequently, the Department dismissed IH's petition seeking to terminate Groseth's franchise, concluding that IH failed to show good cause for termination. IH appealed the Department's decision to the circuit court. Thereafter, Groseth filed a motion to dismiss IH's appeal, claiming that the circuit court lacked jurisdiction in the matter. Groseth con-

---

1. We note that the South Dakota Legislature repealed SDCL ch. 32–6A shortly after IH applied to the Department, seeking termination of Groseth's truck franchise. *See* 1986 S.D.Laws ch. 250, § 63. The statutory provisions regulating vehicle dealers are now contained in SDCL ch. 32–6B.

tended that the circuit court never acquired jurisdiction to hear IH's appeal because service of the notice of appeal upon Groseth was defective. The circuit court denied Groseth's motion to dismiss. It also reversed the Department's decision, holding that Groseth, by refusing to become a part of the DCN, failed to substantially comply with the requirements imposed by the franchise agreement. The circuit court further held that the DCN requirements were both essential and reasonable. It concluded that Groseth's failure to comply with these requirements constituted an independent basis upon which good cause for termination had been shown.

Groseth now appeals the circuit court's decision to this court. It contends that the circuit court erred in refusing to dismiss IH's appeal for lack of jurisdiction. Groseth also claims that the circuit court erred in holding that IH had shown good cause to terminate Groseth's truck franchise. IH, having complied with the notice of review requirements contained in SDCL 15–26A–22, asks this court to review that portion of the circuit court's decision which held that IH waived the issue of anticipatory breach of the franchise agreement.

■ We disagree with Groseth's contention that the circuit court erred in refusing to dismiss IH's appeal. Groseth asserts that notice of appeal in this matter was improperly served. It claims that the requirements of SDCL 1–26–31 which regard serving of a notice of appeal are satisfied only by personal service or service by registered or certified mail. Although Groseth actually received within the statutorily prescribed time period IH's notice of appeal, it argues nonetheless that notice was served improperly because it arrived via ordinary, first class mail.[2]

The statute upon which Groseth principally relies, SDCL 1–26–31, reads as follows:

> An appeal shall be taken by serving a notice of appeal upon the adverse party and upon the agency which rendered the decision, and by filing the same, or a certified copy, with proof of such service in the office of the clerk of courts of the county in which the venue of the appeal is set, within thirty days after the agency served notice of the final decision or, if a rehearing is authorized by law and is requested, within thirty days after notice has been served of the decision thereon. Service required by this section may be performed by registered or certified mail and is complete when the material to be served is deposited with the United States postal service.

We note that only the last sentence of this statute pertains to serving a notice of appeal. The operative verb in said sentence is "may be performed." Ordinarily, the word "may" in a statute is given a permissive or discretionary meaning. It is not obligatory or mandatory as is the word "shall."[3] *See Person v. Peterson,* 296 N.W.2d 537 (S.D.1980); *Tubbs v. Linn,* 75 S.D. 566, 70 N.W.2d 372 (1955); 2A Sutherland Stat. Const. § 57.03 at 643–44 (4th ed.

**2.** Because Groseth was not represented by legal counsel at the hearing, IH sent the notice of appeal to the person appearing on Groseth's behalf, namely, Clifford Groseth.

**3.** We note that in certain instances, the word "may" has the effect of "must." *See State ex rel. South Dakota Game & Fish Comm'n v. O'Neill,* 62 S.D. 522, 254 N.W. 265 (1934). Although the form of verb used in a statute, i.e., whether it says something "may," "shall" or "must" be done, is the single most important textual consideration determining whether a statute is mandatory or directory, it is not the sole determinant. Other considerations, such as legislative intent, can overcome the meaning which such verbs ordinarily connote. 2A Sutherland Stat. Const. § 57.03 at 643–44 (4th ed. 1984). In our search to ascertain the legislature's intended

meaning of statutory language, we look to the words, context, subject matter, effects and consequences as well as the spirit and purpose of the statute. *See Tubbs,* 75 S.D. at 571, 70 N.W. 2d at 375. We believe that the legislative intent in the present case is nearly as clear as the language of SDCL 1–26–31, itself. The legislature's use of the word "shall" in the statute's first sentence in regard to notice of appeal and filing and the use of the word "may" in the last sentence in regard to service of said notice of appeal indicate to us that the change in verbs was intentional. Furthermore, the purpose of SDCL 1–26–31, i.e., conferring jurisdiction over the parties, can be accomplished by serving a notice of appeal in a manner which differs from that specified in the statute.

1984); Sutton, *Use of "Shall" in Statutes,* 4 J. MARSHALL L.Q. 204 (1938), *reprinted in* 1A Sutherland Stat Const. 691 (4th ed. 1985). The clear language of SDCL 1-26-31 therefore indicates that proper service of a notice of appeal from an administrative proceeding is not limited to service by registered or certified mail. We believe that service of such notices of appeal also may be accomplished in the same manner by which a summons and complaint, as well as other pleadings, are served, i.e., personal service or service by ordinary, first class mail. *See* SDCL 15-6-5(b). Accordingly, we hold that the circuit court did not lack jurisdiction in this matter and that said court did not err in refusing to dismiss IH's appeal.

■ In its second issue on appeal, Groseth claims that the record does not support the circuit court's determination that the franchise agreement was breached by Groseth or that IH had good cause to terminate Groseth's franchise. We, like Groseth, view this issue as a mixed question of law and facts. Because this matter arose from an agency decision, we apply the standard of review which was clearly set out by this court in *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113 (S.D. 1987). In *Permann,* we held that a mixed question of law and facts is treated in the same manner as question of law. Such questions are of the type which we may freely review. *Id.* at 119.

A franchisor seeking to terminate a franchise under the provisions of SDCL ch. 32-6A must show that it has good cause for termination.[4] SDCL 32-6A-5. The only statutory guidance as to what constitutes good cause is found in SDCL 32-6A-6, which provides:

In determining whether good cause has been established for terminating or not continuing a franchise, the department of commerce and regulation shall take into consideration the existing circumstances, including, but not limited to:

(1) Failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise, which requirements are both essential and reasonable.

(2) Use of bad faith by the franchisee in carrying out the terms of the franchise.

IH, in a letter notifying Groseth of its intent to seek termination of Groseth's franchise, accused Groseth of breaching paragraphs "9, 16(a)(1)(iv), 16(b)(4), 16(b)(5), 16(c)(2), 16(c)(5), 16(c)(7), 16(c)(9), 18, and 25" of the franchise agreement. The Department found that no breach of the franchise agreement had occurred. We note that the DCN capabilities which related to the provisions in paragraphs 9, 16(a)(1)(iv), 16(b)(4), 16(c)(2), 16(c)(5), 16(c)(7), 16(c)(9), 18, and 25 were still in the developmental stages at the time of the hearing. Therefore, the Department's determination as to these sections was not erroneous.

■ We, however, do not reach the same conclusion in regard to paragraph 16(b)(5) of the franchise agreement. This section required Groseth "[t]o cooperate with the Company by placing orders for goods in accordance with advance ordering programs announced by the Company." Although the DCN was not specifically mentioned in the franchise agreement, we believe that Groseth's refusing to utilize the system for the one function of which it was then capable, namely, parts ordering, constituted not only a breach of the franchise agreement but also good cause for terminating its franchise. The record shows that at the time of the hearing, Groseth still did not possess the required computer hardware and software which would enable it to order parts via the DCN. Futhermore, it had taken no steps toward meeting

---

**4.** Under SDCL 32-6A-5, the franchisor also must show that "upon termination . . ., another franchise in the same line-make will become effective in the same community, without diminution of the motor vehicle service formerly provided, or that the community cannot be reasonably expected to support such a dealership." The Department, in its findings of fact, determined that the Yankton community could not support a new IH truck franchise if Groseth's franchise was terminated. Groseth did not appeal this finding to the circuit court. Consequently, the only remaining issue before this court is whether IH had good cause to terminate Groseth's franchise.

the DCN requirements. Our review of the record indicates that the DCN, even with its limited capabilities at the time of the hearing, was an essential and reasonable requirement to impose upon Groseth and the other dealers. Implementation of the DCN was viewed as a necessary step in the effort to reorganize IH so it could compete in the marketplace and remain a viable business. The use of the DCN by IH dealers allowed IH to trim its payroll of employees who previously had been needed to manually process orders and conduct business with dealers. In addition, Groseth was the only IH dealer who refused to participate in the DCN. Unrefuted testimony at the hearing indicated that its refusing to do so presented a hardship to IH.

In light of the foregoing, we hold that IH established good cause for terminating Groseth's truck franchise and affirm the decision of the circuit court. We deem the issue which IH raises by notice of review to be moot and need not address it.

MORGAN, HENDERSON, and, MILLER, JJ., concur.

SABERS, J., concurs in part and concurs specially in part.

SABERS, Justice (concurring in part and concurring specially in part).

I concur specially on the notice issue because Groseth received timely notice of appeal and was not harmed or prejudiced in any manner by the fact that it arrived by "ordinary, first class mail." *Matter of A.L.*, 442 N.W.2d 233 (S.D.1989); *Matter of B.J.E.*, 422 N.W.2d 597 (S.D.1988). It is a proper matter for statutory interpretation and construction of legislative intent in SDCL 1-26-31. *See* my writing in *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 767 (S.D.1989). However, the *dicta* in the majority opinion which implies that a summons and complaint is properly served by "ordinary, first class mail" under SDCL 15-6-5(b) is clearly incorrect. *Jensen Ranch, supra.*