CHARLES A. LAWES COMPANY, an Illinois corporation, Plaintiff-Appellant,

v.

DETEX WATCHCLOCK CORPORATION, a Delaware corporation, Defendant-Appellee.

No. 13357.

United States Court of Appeals
Seventh Circuit.

Feb. 20, 1962.

Rehearing Denied April 9, 1962.

Clarence F. Martin, Chicago, Ill., for appellant.

Albert E. Hallett, Keith Shay, Chicago, Ill. (Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., of counsel), for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Charles A. Lawes Company, an Illinois corporation, plaintiff, has appealed from a summary judgment entered by the district court in favor of Detex Watchclock Corporation, a Delaware corporation, defendant, and also the denial by said court of plaintiff's motion for summary judgment.

By its complaint, plaintiff sought to recover damages for an alleged breach of contract. Defendant having answered, depositions, as well as admissions by both parties, were received.

Defendant makes and sells watch clocks, and also sells paper dials and tapes used in the clocks to record the activities of watchmen in their rounds.

Plaintiff under date of May 1, 1947 entered into a written contract with defendant for the production of dials and tapes for defendant. The contract period was 15 years, with a provision that defendant could, by written notice, terminate the contract at the end of 10 years. The contract further provided that upon its termination defendant agreed to buy certain personal property, at a price to be fixed by three appraisers.

There is testimony of Willard Anderson, plaintiff's secretary, that at a meeting in July or August, 1955, there were present, besides himself, William P. Stammer, president of plaintiff, Philip H. Haselton and Arthur F. Gmitro, president and vice-president of defendant, and that Haselton informed plaintiff's representatives that he had determined to terminate the contract rather than exercise an option to continue it for five years.

Thereupon each party appointed an appraiser. They made separate appraisals.

On September 20, 1955, Haselton and Gmitro met with Stammer and Anderson and exchanged copies of their respective

appraisals. It is contended by plaintiff that at this meeting, without the appointment of a third appraiser, defendant *agreed* (a) to buy items listed in the written appraisals, (b) at a price of $40,000, (c) upon the termination of the written contract. In its answer defendant denied this *agreement.*

Anderson testified that Stammer suggested that they arrive at a figure for the plant[1] between the two appraisals and asked "How about $40,000?" Haselton and Gmitro agreed to the figure.

It is uncontroverted on the record that during the conference when the sale price of $40,000 was agreed upon, the following matters were discussed and left undecided: how and over how many years the said $40,000 would be paid; whether the 1947 written contract was to be terminated before April 30, 1957 and, if so, as of what date defendant was to take over the machinery and equipment; and whether (and, if so, when) Stammer and Anderson were to assist defendant, in assembling and operating said machinery and equipment in its plant, and in teaching its employees how to operate it, and what the terms, conditions and wages to be paid them for such personal services, were to be.

Stammer testified he then suggested (to Haselton) that he "go back to New York, write it up and submit it, and Willard [Anderson] and I will consider it".

Anderson testified that:

" * * * we didn't commit ourselves on whether it was a good arrangement or not. However, I think Mr. Haselton agreed with us he would outline the proposals in a letter."

Anderson admitted that, "in the early discussion about their wanting to get all of this under one roof and into their plant, it was discussed * * * whether" Anderson "and Stammer would be willing to come and help them to set up that equipment and show them how to work it; * * * they didn't know how to do it."

About September 24, 1955, plaintiff submitted a typewritten "Proposal for the Sale" to defendant, signed by Stammer, in which the following was listed: Machinery & Equipment, $40,000—Deferred payments—Finished Goods—Work in process—Raw stock—Per inventory. F.O.B. our plant in Villa Park. Also three suggested salary scales for Anderson and Stammer were included in the proposal, which concluded as follows:

"We trust anyone of these proposals meets with your approval and we may have this settled as quickly as possible, so we can arrange for the sale of our building and other personal matters."

Plaintiff offered in support of its argument the following excerpts from the testimony of Haselton:

"Q. Then when you refer to the 'present contract' in your letter of September 30th, 1955, in the first paragraph at the top of page 2, you are referring to the contract between the two companies, dated 5–1–47?

"A. Right.

"Q. Now will you please refer to a copy of that written contract and give me the language of that contract, which fixes the price of the machinery at $40,000?

"A. There is none."

It seems to be plaintiff's contention that in using the words "present contract" the witness was referring to a new contract which plaintiff is now insisting came into existence on September 20, 1955, which is, of course, the litigated question in this appeal. Haselton was examined by plaintiff's counsel on this point. We feel certain that Haselton was referring to the only contract which defendant recognizes, that is the 1947 contract.

In its complaint, plaintiff seeks to compel defendant to perform an alleged ver-

---

4. "Plant" is used by plaintiff's appraisers to designate plaintiff's machinery and equipment.

bal agreement of September 20, 1955, by paying $40,000 plus interest and expenses incurred. Defendant resists, contending that no contract was then consummated and that at the conference held between the parties that day, while $40,000 was agreed to be the price which defendant would pay for plaintiff's equipment, at least three major items of the proposed contract remained unsettled and open to further negotiation.

1. The facts relevant to defendant's contention are not in dispute. Hence there is no genuine issue of fact before us. The question is one of law. The case was appropriate for summary judgment. Parmelee Transportation Company v. Keeshin, 7 Cir., 292 F.2d 794, 797; Repsold v. New York Life Insurance Company, 7 Cir., 216 F.2d 479, 483.

2. We are convinced from the undisputed evidence in this record that the parties to the conference of September 20, 1955 had not completed their contractual purpose when their minds met in fixing the sale price of the equipment at $40,000. Their negotiations did not ripen into a contract at that point, for they recognized and continued to recognize in several ways that further negotiations on various details lay ahead of them. In view of this condition of the record, the district court was justified in determining that there was no genuine issue of fact presented and that the uncontroverted facts failed to show that a contract was entered into as alleged in the complaint. For that reason a summary judgment for defendant was properly entered and plaintiff's motion for summary judgment was properly denied.

The judgment of the district court from which this appeal has been taken is affirmed.

Judgment affirmed.

KNOCH, Circuit Judge (dissenting).

Regretfully, I dissent. The fact that the parties were aware of other matters on which they contemplated further negotiation, did not, in my opinion, detract from the fact that they did agree on the sale of the equipment for $40,000. I would reverse and remand for entry of judgment for plaintiff on the ground that plaintiff had an enforceable contract for that sale.