**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**MT. VERNON MILLING COMPANY, DI-
VISION OF J. R. SHORT MILLING
COMPANY, Defendant-Appellee.**

**No. 14923.**

United States Court of Appeals
Seventh Circuit.

April 30, 1965.

Kiley, Circuit Judge, dissented.

Sherman L. Cohn, Martin Jacobs, Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Richard P. Stein, U. S. Atty., for plaintiff-appellant.

Edward R. Adams, Chicago, Ill., Harry P. Dees, Evansville, Ind., for defendant-appellee, Miller, Gorham, Wescott & Adams, Chicago, Ill.; Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-appellant, the United States of America, brought this action on behalf of the Commodity Credit Corporation, hereinafter sometimes called "CCC", to recover damages from Mt. Vernon Milling Company, Division of J. R. Short Milling Company, defendant-appellee, due to an alleged breach of the defendant's contract to grind corn owned by the CCC into cornmeal. Plaintiff alleged that the defendant redelivered to CCC cornmeal which was unfit for human consumption because it contained rodent excreta.

Plaintiff has appealed from the District Court's entry of summary judgment for defendant and subsequent denial of plaintiff's motion for reconsideration.

For purposes of its motion for summary judgment, the facts are largely undisputed by the defendant. In August, 1957, defendant contracted with the CCC to process 31,887 bushels of shelled corn into one million pounds of degermed cornmeal in 100 pound bags for export shipment. The CCC had the right to reject any cornmeal which did not meet contract quality requirements and to require replacement or the market value f. o. b. defendant's plant, the cornmeal to con-

form to applicable provisions of the Federal Food, Drug and Cosmetic Act, as amended, 21 U.S.C. § 301 et seq. and regulations issued thereunder. Defendant was to be liable for loss, damage, destruction or deterioration of the commodity until it was delivered to the CCC pursuant to the contract.

In September, 1957, the CCC instructed defendant to deliver the one million pounds of cornmeal to the Catholic Relief Services at Mobile, Alabama, for loading in a vessel on or before October 10, 1957.

Between September 25th and October 15, 1957, test samples were taken of the corn while in process by representatives of the CCC. Prior to receipt of inspection certificates the cornmeal was sent to Mobile and on or about November 2, 1957, was loaded on the vessel for transport to Naples, Italy, as a gift of food to the Italian people.

After the vessel left, an inspection certificate issued indicating that half of the cornmeal failed to meet contract specifications because of rodent excreta, making the meal unfit for human consumption. The meal arrived in Naples December 3, 1957. As a result of analysis by the Province Laboratory of Public Hygiene and Prophylaxis of Naples, the meal was judged unfit for human consumption because of mold fungus. The entire shipment was donated to the Italian people for use as animal food.

Plaintiff sought to recover the market value of one-half the corn delivered to defendant ($19,570.65) plus the freight charges attributable to delivery of the corn to defendant for processing ($2,366.01) or a total of $21,936.66.

Defendant moved for summary judgment in its favor on the ground that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law.

Relying on the pleadings, including its own answer denying that plaintiff was damaged as a result of defendant's conduct; answers to interrogatories; and affidavit of Dr. Ferrari, a cereal chemist and biochemist, to the effect that there is no causal connection whatever between rodent excreta and the formation of mold fungus, which caused the meal to be rejected for human consumption in Italy; defendant argued that plaintiff's damages were not the natural or proximate consequence of the alleged breach by the defendant.

Plaintiff contended that the subsequent conduct of the ocean carrier which resulted, possibly through sea water seepage into the ship's hold, in the formation of mold fungus, could not relieve the defendant of damages for its breach of conduct.

Plaintiff argues that the ocean carrier could be held liable only for damages to the cornmeal received in a fit condition for human consumption. There was no showing that any action was instituted against the carrrier to which such a defense was raised.

As the defendant notes, the only evidence before the Court in connection with the motion for summary judgment indicated that the damage of which plaintiff complains did not result from defendant's alleged breach of contract. To recover damages plaintiff must show that those damages flow directly and naturally from the breach of contract which defendant here admitted for the purposes of its motion for summary judgment. The breach must have been the cause of the injury. Reddick v. McAllister Lighterage Line, Inc., 2 Cir., 1958, 258 F.2d 297, 300, cert. den. sub. nom., McAllister Lighterage Line, Inc. v. John T. Clark & Son, Inc., 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229.

The sole damage shown resulted from the presence of mold fungus. Dr. Ferrari's uncontroverted affidavit shows no causal connection between the alleged breach of contract and mold fungus formation. At this point in the proceedings, something more was required of the plaintiff beyond bare allegations and conclusions of its complaint to show the existence of an issue as to a material fact to prevent grant of a motion for summary judgment. First National Bank in

Billings v. First Bank Stock Corp., 9 Cir., 1962, 306 F.2d 937, 943.

■ Contentions dispositive of the case were not in dispute. The District Court correctly concluded that there was no genuine issue as to any material fact necessitating a trial. Charles A. Lawes Co. v. Detex Watchclock Corp., 7 Cir., 1962, 300 F.2d 393, 395. To oppose the motion successfully, plaintiff was obliged to come forward with evidence to show the existence of a conflict. Repsold v. New York Life Ins. Co., 7 Cir., 1954, 216 F.2d 479, 483; Robson v. American Casualty Co. of Reading Pa., 7 Cir., 1962, 304 F.2d 656.

Plaintiff was given every opportunity, almost in fact urged, by the District Judge to adduce evidence that would refute the undisputed fact that plaintiff's damages were caused by the intervening factor of mold fungus in the entire shipment of cornmeal and not by the rodent excreta in half of the shipment.

Plaintiff quotes from the transcript the following colloquy to show that the District Court misconceived the nature of the respective burdens of the parties:

"The Court: I have found out that the food and drug laws of nations differ some; even in this country it differs some. * * * Now the reason why I point that out to you, the food and drug laws of Italy may pay you dollar for dollar for this food for human consumption.

"Mr. Thornton [Counsel for plaintiff]: I think if you base your Motion for Summary Judgment on the fact they may accept rat excreta, there is no proof to show that that would be the case.

"The Court: I will let you reopen the record, if you want to.

"Mr. Thornton: The burden of proof is upon the moving party in the case to show that. I have no evidence at this time.

"The Court: You are mistaken about that, Mr. Thornton. That's where quite a few people are mistaken about Motions for Summary Judgment. The Motion for Summary Judgment isn't a motion to dismiss, where they admit anything you plead. They say that the evidence before this Court in support of and in opposition to this Motion for Summary Judgment, that there is no argument about the facts of it, and you can't prove your case with the evidence that's before the Court. That's what their Motion says, and the burden is upon you, the plaintiff. You can't say that the defendant hasn't brought all the evidence in. We will permit you to produce more evidence if you want to. Plaintiff has the burden of offering the evidence to show there is a conflict of evidence, in opposition, where a motion is made by the defendant for summary judgment. We can't stand idly by. I will open the record, here, and let you offer any evidence you have. If you can show Italy turned this down because of rat excreta, and that's why you have suffered the damage—I don't want to take advantage of you—"

At another point, the District Court said:

"The Court: Now, do you have any evidence to offer to show that the purchaser, the consignee, of this cornmeal in Italy rejected this because of rat excreta in it—the alleged breach that you are referring to against this defendant in this case?

"Mr. Thornton: Your Honor, we do not.

"The Court: That closes the books, then, so far as the evidence is concerned."

Plaintiff argues that it is immaterial what the standards of Italy may be; that the cornmeal is alleged to be unfit for human consumption under the laws of the United States; that the meal was not offered for sale in Italy but as a gift and that the United States in the eyes of the world would be seriously damaged by offering as a gift to the Italian people meal considered unfit for consumption by

United States citizens; and hence that damage is either clearly shown or presents a genuine issue of material fact for trial.

 Intangible speculation does not raise an issue of material fact. Chesapeake & Ohio Ry. Co. v. International Harvester Co., 7 Cir., 1959, 272 F.2d 139, 142.

We cannot agree with the plaintiff's view. As the District Judge said:

"The Court: How are you going to show damage to the plaintiff here, or breach of contract, if the folks who in effect bought it from you, in Naples, didn't reject it for human consumption for the reasons you are listing here * * * Yes, they breached the contract, but I am talking about the damage. Would you have been damaged? For example, suppose there was no fungus rejection; suppose Italy accepted it, and accepted your gift—or paid you for it, whatever it was—* * * you don't have any showing in your evidence here that your sale in Italy was turned down because of that defect or breach; the sale was turned down in Italy, the evidence shows me, because of some other purpose, some other wrong entirely."

The judgment of the District Court is affirmed.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

The district court found that the contract between the parties was breached by defendant's delivery at Mobile of the contaminated meal, but decided that plaintiff could not prove the breach proximately caused plaintiff any damage. In my view the court erred in precluding plaintiff from a trial.

Plaintiff's answers to interrogatories, and the certificate of inspection, showing contamination in the meal, were considered by the district court in support of plaintiff's claim that it was damaged by defendant at Mobile. These, in my opin-

ion, were sufficient to present an issue of the proximate cause and extent of the damage. What occurred in Naples, Italy is not involved in the question.

The district court misconceived the elements involved in the question whether there was a genuine issue of material fact under F.R.Civ.P. 56, when it regarded as material the question whether the Italian Government would have accepted as fit for human consumption cornmeal already condemned under the United States food and drug laws because of the presence of rodent excreta. Whether or not the Italian Government would accept the meal, the United States could not reasonably offer as a gift to the people of any country food which our law condemns as unfit for human consumption. Defendant knew from the contract that the meal was intended for human consumption and for "domestic or export shipment," and it breached its contract by delivering meal which failed to meet the contract specifications and which was unsuitable for its intended purpose. By the terms of the contract defendant agreed that it

"shall be liable for loss, damage, destruction, or deterioration from any cause whatever of commodity received from Agency [Commodity Credit Corporation] until serviced commodity has been delivered to Agency in accordance with provisions of the Contract."

Under these circumstances the United States could not be required, as an element of its case, to prove that the Italian Government would have refused to accept the meal because of the presence of rodent excreta. That is immaterial.

But even if the question whether the meal would have been regarded as fit for human consumption under Italian law was material, the district court improperly placed a burden of going forward on plaintiff. In its complaint plaintiff alleged that the meal delivered by defendant was, without qualification, unfit for human consumption, and the appended inspection certificate showed its failure to meet American food and drug law

standards. In support of its motion for summary judgment defendant showed only that the meal was adjudged unfit for human consumption in Italy because of mold fungus and that there is no causal connection between rodent excreta and mold fungus. Defendant's affidavit was not sufficient to show that the meal was fit for its intended purpose of human consumption, in spite of the rodent excreta, in Italy. Thus a genuine issue of material fact remained and plaintiff had no burden of going forward with affidavits or other evidence.[1] If defendant wished to show that the Italian Government would have accepted the meal for human consumption, contaminated as it was by rodent excreta, and that the United States would not thereby be prejudiced, the burden was upon it, as movant, to present evidence to that effect. United States v. Ball, 326 F.2d 898 (4th Cir. 1964). Only in that event could the plaintiff have been required to make a showing to the contrary sufficient to raise a genuine issue of material fact to avoid summary judgment against it.

In addition, in the absence of any evidence on the point it was as reasonable to assume that Italian law also would condemn this meal because of the rodent excreta as it was to assume the contrary. The entire shipment was rejected because of the mold fungus. Presumably, then, there was no reason for the Italian inspectors to go further and reject half of it because that half also contained rodent excreta. On motion for summary judgment, where "the inferences to be drawn from the underlying facts contained in * * * [affidavits, exhibits, etc.] must be viewed in the light most favorable to the party opposing the motion," United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), it was improper for the district court, on the basis of speculation that Italian law might be different from the United States law, to place on plaintiff, the opposing party, the burden of showing the contrary.

I agree with plaintiff that it was damaged in Mobile by delivery of the contaminated cornmeal "to the extent of the difference between unadulterated cornmeal and the cornmeal unadulterated by rodent excreta." This is unaffected by the shipowner's breach of its contract and the further damage to the contaminated meal from mold fungus. Had defendant performed its obligations the shipowner's liability would have been the difference in value between unadulterated meal and meal contaminated by mold fungus.

The majority decision leaves defendant with the price plaintiff paid it for processing uncontaminated meal, plaintiff with the greatly diminished if not destroyed liability of the shipowner for its breach, and settles the loss on plaintiff, the only innocent person involved.

In my opinion there was a genuine issue of material fact made or offered by the answers to interrogatories, the inspection certificate, and the admitted contract price paid for processing uncontaminated corn into meal. Plaintiff was damaged at Mobile and should not be precluded from trial upon the facts against defendant, who caused the damage, because a third party caused further damage or because the damage might be slight. See CORBIN ON CONTRACTS § 1001 (1964 ed.) Defendant could show at a trial whatever was relevant in mitigation.

1. As the Notes of the Advisory Committee on the Federal Rules of Civil Procedure point out, in regard to the amendment to subsection (e) of Rule 56, effective July 1, 1963, "where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." 28 U.S.C.A. (Supp.1964) pp. 71–72.